ROBERT H. MacPHERSON, JOSEPH D. LEWIS, HARRY HEWITT, LEONARD R. ORDERS, JR., FOR THEMSELVES AND FOR AND ON BEHALF OF THE CITIZENS, RESIDENTS, AND PROPERTY OWNERS IN WARD 8 OF THE CITY OF ASHEVILLE, NORTH CAROLINA v. THE CITY OF ASHEVILLE AND THE KINGSTON CORPORATION AND THE ERVIN COMPANY

No. 28

(Filed 9 May 1973)

1. Parties § 3; Rules of Civil Procedure §§ 19, 25— motion to add necessary party defendant — movant not a party to the action — absence of prejudice

Where plaintiffs sought to restrain a municipality from issuing a building permit for construction of an apartment complex to corporate defendant or its successors or assigns, and corporate defendant's parent corporation became the owner of the legal title to the land upon which the apartments were to be constructed, the trial court had full authority, on its own motion, to bring the parent corporation in as a necessary party, and plaintiffs were not prejudiced by the irregularity, if any, in the court's allowance of a motion by the parent corporation, which was not a party to the action, that it be made a party defendant pursuant to G.S. 1A-1, Rule 25(d). G.S. 1A-1, Rules 19(a) and (b).

2. Municipal Corporations § 30— applicant for building permit — when status attaches

Under the Asheville Zoning Ordinance, one does not become an "applicant" for a building permit relating to a group development until he submits his site plan to the City Council; therefore, the fact that a corporation owned no interest in the land to be developed at the time it submitted its site plan to the Planning and Zoning Commission was of no significance where the corporation was the owner of the property when it thereafter formally tendered its plan to the City Council.

3. Statutes § 5— construction — administrative interpretation

Where an issue of statutory construction arises, the construction adopted by those who execute and administer the law in question is relevant and may be considered.

4. **Municipal Corporations § 30— building permit — owner of property — prospective vendee under executory contract of sale**

An applicant for a building permit for construction of an apartment complex was an "owner" of the land to be developed within the meaning of a municipal zoning ordinance where it was the prospective vendee under an executory contract of sale executed by the record owners.

APPEAL by plaintiffs from judgment of *Thornburg, J.,* 4 September 1972 Session, BUNCOMBE Superior Court.

By this action plaintiffs seek to enjoin The Kingston Corporation from applying for or obtaining a building permit for a proposed apartment complex and to enjoin the City of Asheville from issuing such permit to The Kingston Corporation, its successors or assigns. None of the parties having requested a jury trial, the matter came on for hearing before Judge Thornburg who heard the evidence, found the facts and entered the judgment from which plaintiffs appeal.

The facts necessary to an understanding of the questions presented on this appeal appear in the following numbered paragraphs:

1. The plaintiffs are citizens and residents of Asheville, North Carolina, residing in Ward 8 of said City where they own residential real estate.

2. The Kingston Corporation is incorporated under the laws of North Carolina and is a wholly owned subsidiary of The Ervin Company, incorporated under the laws of Delaware with its principal office in Charlotte, North Carolina.

3. Section 9C of Ordinance number 322 of the City of Asheville deals with "group developments" as defined in Section 19 of said ordinance. Section 9C reads as follows:

"C. GROUP DEVELOPMENTS. Group Developments as defined in Section 19 of this Ordinance, planned as a single unit may be approved by the City Council. The following procedure is set forth to permit diversification in the location of structures and to improve circulation and other site qualities while insuring adequate standards relating to public health, safety, welfare, and convenience in the arrangement of structures and facilities in planned group developments such as shopping centers, industrial parks,

large retail establishments, drive-in theaters, public Housing Developments, leased or conventional, etc.

1. Prior to the issuance of building permits for the construction of building in any group development, a site plan shall be submitted to and approved by City Council. Prior to such approval, the City Council shall obtain the recommendations of the Asheville Planning and Zoning Commission on any site plan for a group development and hold a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. A Notice of such public hearing shall be given once a week for two successive calendar weeks in a newspaper published in the City of Asheville. Said notice shall be published the first time not less than fifteen (15) days prior to the date fixed for said hearing.

2. The applicant must be the owner of the land considered for the group development, or the owner's duly and legally authorized agent. In cases of public housing developer or housing authority or its successor shall be permitted to make direct application hereunder."

4. On 15 May 1971 Lillian S. Roberson, acting by and through her attorney-in-fact, Sarah Virginia Roberson, executed a written agreement whereby she gave The Kingston Corporation, its successors and assigns, the right to purchase a tract of land consisting of approximately twenty acres, said land being a portion of Lot 19, Sheet 29, Ward 8, as shown on the tax maps of the City of Asheville. This agreement provided that The Kingston Corporation could give written notice of its intention to purchase the property any time to and including 15 September 1971, and that the agreement could be extended for an additional period of sixty days if necessary to obtain the Federal Housing Administration's approval of a project The Kingston Corporation proposed to build on the land described in the option. The name and type of the project was not specified in the option agreement but it was stated therein that the seller would cooperate with The Kingston Corporation "for any reasonable request, which may be necessary to complete the project, as to zoning, City and County Ordinances, and the City and County Planning Commission." By a paper-writing dated 11 November 1971 the period of time in which The Kingston Corporation or its assigns had a right to purchase the property of Lillian S.

Roberson was extended for a period of sixty days from 14 November 1971.

5. The real property owned by the plaintiffs and the Lillian S. Roberson property (a portion of Lot 19, Sheet 29, Ward 8 on City of Asheville tax maps) was at all times pertinent to this case and is presently zoned as RA-6 residential. Section 4 of Ordinance number 322 of the City of Asheville provides that multiple family dwellings or apartment houses may be constructed upon property zoned under the classification RA-6 residential.

6. On 9 November 1971 The Kingston Corporation submitted to the Planning and Zoning Commission of the City of Asheville a site plan for an apartment complex known as Spruce Hill Apartments. This site plan proposed an apartment complex for a tract of land consisting of approximately eighteen acres, being a portion of Lot 19, Sheet 29, Ward 8 of the City of Asheville. On 15 May 1971 and thereafter until her death on 9 December 1971, Mrs. Lillian S. Roberson was the record owner of the fee simple title to the real estate known as Lot 19, Sheet 29, Ward 8 of the City of Asheville.

7. On 12 January 1972 the Planning and Zoning Commission voted not to recommend the approval of the site plan for Spruce Hill Apartments submitted by The Kingston Corporation and notified the Asheville City Council accordingly.

8. On 13 January 1972, Sarah V. Roberson, as Executrix of the Will of Lillian S. Roberson and individually as a beneficiary thereunder, and Ernest Mark Smith, Jr., a beneficiary under said will, and his wife Jane Smith, entered into a written contract to sell to The Kingston Corporation or its assigns the eighteen acres of land upon which the proposed Spruce Hill Apartment project was to be built. The recited consideration for the land was One Hundred and Twenty-two Thousand ($122,-000.00) Dollars. This contract recited that it was understood and agreed and acknowledged by the seller that The Kingston Corporation was entering into the agreement as a land developer and intended to use the property for the construction thereon of multiple family dwellings, and that in the event The Kingston Corporation or its assigns were not able to obtain the required building permit by 15 March 1972 then it could elect to terminate the contract.

9. On 17 February 1972 a public hearing was duly conducted by the Asheville City Council after written request by

The Kingston Corporation and after notice thereof. was duly published as required by Zoning Ordinance number 322. At the conclusion of the public hearing, which lasted approximately two hours and forty-six minutes during which all matters concerning the Spruce Hill Apartment project were presented and discussed, including the question of ownership or authority of The Kingston Corporation to present the site plan, the Asheville City Council voted four (4) in favor and two (2) against approval of the site plan submitted by The Kingston Corporation "contingent upon the applicant filing within five (5) days such additional evidence of authority as the applicant, The Kingston Corporation, desires to file." Within five days The Kingston Corporation filed with the Asheville City Council a copy of the contract dated 13 January 1972 between Sarah V. Roberson, Ernest Mark Smith, Jr. and wife Jane Smith, and The Kingston Corporation.

10. The Spruce Hill Apartment project is a group development within the meaning of Section 19 of the Zoning Ordinance number 322.

11. On 6 March 1972 the Board of Directors of The Kingston Corporation voted to have its parent company, The Ervin Company, take the legal title to the property and complete the project known as the Spruce Hill Apartments. By deeds dated March 8 and 15, 1972, legal title to the eighteen-acre tract of land was duly conveyed to The Ervin Company.

12. On 15 March 1972 plaintiffs instituted this action and a temporary restraining order was issued, restraining the City of Asheville from issuing a building permit and The Kingston Corporation or its assigns from applying for such a permit or proceeding with construction until a show cause hearing. The temporary order was continued pending final hearing on the merits.

13. When the matter came on for trial The Ervin Company, pursuant to Rule 25(d) of the Rules of Civil Procedure, moved to be made a party defendant.

Upon the foregoing facts Judge Thornburg concluded, among other things: That The Ervin Company is a necessary party and its motion to be made a party defendant should be allowed; that from 15 May 1971 to 15 March 1972 during which the Spruce Hill Apartments site plan was being considered by

MacPherson v. City of Asheville

the Asheville Planning and Zoning Commission and the Asheville City Council, Mrs. Lillian S. Roberson, or her estate and beneficiaries under her will, were the record title owners in fee simple of the property in question but were legally bound to convey title to said property to The Kingston Corporation or its assigns; that, as used in Section 9C of Zoning Ordinance 322, the word "owner" embraces more than the owner of the *record title* to land; and The Kingston Corporation, at the time it applied for an approval of its site plan for the Spruce Hill Apartments project, had a sufficient interest in the land to qualify as "owner" within the purposes and intent of Section 9C of the Zoning Ordinance; that plaintiffs have not shown themselves entitled to the relief sought and this action should be dismissed.

It was accordingly adjudged that The Ervin Company be made a party defendant, the temporary injunction dissolved, and the action dismissed. Plaintiffs appealed to the Court of Appeals. On petition by defendants in which plaintiffs acquiesced we allowed certiorari to the Court of Appeals prior to determination, and the case is now before this Court for initial appellate review. Errors assigned are discussed in the opinion.

*Roberts & Cogburn by Max O. Cogburn for plaintiff appellants.*

*Patla, Straus, Robinson & Moore, P.A., by Robert J. Robinson, for The City of Asheville, defendant appellee.*

*Shuford, Frue & Sluder by Gary A. Sluder, for The Kingston Corporation and The Ervin Company, defendant appellees.*

HUSKINS, Justice.

[1] Rule 25 (d) of the Rules of Civil Procedure provides: "In case of any transfer of interest other than by death, the action shall be continued in the name of the original party; but, *upon motion of any party,* the court may allow the person to whom the transfer is made to be joined with the original party." (Emphasis added.) The Ervin Company moved that it be made a party defendant pursuant to Rule 25 (d). Since the movant was not a party to the action, plaintiffs contend it could not properly make such motion and that the court erred in allowing it. This is the basis for plaintiffs' first assignment of error.

Plaintiffs sought a permanent order restraining the City of Asheville from issuing The Kingston Corporation or *its successors or assigns* a building permit for the construction of the Spruce Hill Apartments. A temporary restraining order to that effect was issued by Judge Anglin. When The Ervin Company as parent corporation of The Kingston Corporation became the owner of the legal title to the land upon which the Spruce Hill Apartments were to be constructed, it became, by virtue of that transfer, the "successor" against whom injunctive relief was sought. In our view, The Ervin Company was then a necessary party to a complete determination of this action and, aside from Rule 25(d), the court had full authority, *on its own motion,* to bring The Ervin Company in as a necessary party. Whether the court acted on its own motion or in response to motion of The Ervin Company is of no legal significance under the facts of this case. When a complete determination of a claim cannot be made without the presence of other parties, the court is, required to bring them in. Rule 19(a) and (b), Rules of Civil Procedure; *Strickland v. Hughes,* 273 N.C. 481, 160 S.E. 2d 313 (1968); *Garrett v. Rose,* 236 N.C. 299, 72 S.E. 2d 843 (1952). Plaintiffs' sole objection is that the motion was made by The Ervin Company. We fail to see how this irregularity, if such it be, could have prejudiced plaintiffs. The record shows that The Ervin Company became the owner of the legal title to the land in question on 15 March 1972, prior to service of plaintiffs' complaint upon The Kingston Corporation. The Ervin Company thus became the party plaintiffs really needed to enjoin. It would seem, therefore, that plaintiffs' cause was aided, not injured, by making The Ervin Company a party defendant, thus binding it to obey the court's decree. This assignment is overruled.

Plaintiffs contend the trial court erred in concluding as a matter of law that The Kingston Corporation, at the time it applied for approval of its site plan for the Spruce Hill Apartments project, had a sufficient interest in the land to qualify as "owner" within the purpose and intent of Section 9C of the Zoning Ordinance. We now examine the soundness of this contention.

The ordinance in question does not specify at what point in time one becomes an "applicant" for approval of a site plan. Plaintiffs contend that The Kingston Corporation became an applicant when it submitted its site plan to the Asheville Plan-

ning and Zoning Commission on 9 November 1971. From this, plaintiffs argue that since Kingston then had no interest whatsoever in the land to be developed (its option of 15 May 1971 having expired on 15 September 1971 and not having been renewed until 14 November 1971), it was not an owner when it became an applicant. Hence, plaintiffs argue, an essential condition precedent to the issuance of a building permit has not been met.

In the alternative, plaintiffs contend that even if The Kingston Corporation did not become an applicant until the public hearing on the site plan was held by the Asheville City Council on 17 February 1972, nevertheless it was not then an "owner" of the land to be developed since it was at that point only the prospective vendee under an executory contract of sale executed on 13 January 1972 by those who were then the record owners.

While we do not think it necessary to reach these contentions of plaintiffs in order to dispose of the case, we shall discuss them, assuming *arguendo* but not deciding, that (1) if The Kingston Corporation were not an owner at the time it became an applicant this would in fact vitiate all subsequent proceedings involving the application, and (2) plaintiffs "as citizens and residents of the City of Asheville residing in and owning residential real property in Ward 8" have standing to assert Kingston's non-ownership in bar of the issuance of a building permit. We express no opinion on either of these arguable questions but merely assume them to be true in order to reach plaintiffs' contentions.

[2] The ordinance requires that before a building permit may issue, a site plan must be "submitted to and approved by City Council. Prior to such approval, the City Council shall obtain the recommendations of the Asheville Planning and Zoning Commission. . . . " Nothing in this language requires the applicant to submit his site plan to the Planning and Zoning Commission, and the fact that defendant did so on 9 November 1971 did not make it an "applicant." Instead, the quoted language makes it apparent that one does not become an "applicant" until he submits his site plan to the City Council itself. This occurred in this case on 17 February 1972 when Kingston formally tendered its plan for the Council's approval. Accordingly, plaintiffs' first argument is without merit. The fact that Kingston had no interest in the land on 9 November 1971 is immaterial.

MacPherson v. City of Asheville

By 17 February 1972 The Kingston Corporation was the prospective vendee of the land to be developed under a binding executory contract of sale. As such, it was regarded by the Asheville City Council as an "owner" within the meaning of the ordinance.

[3] Where an issue of statutory construction arises, the construction adopted by those who execute and administer the law in question is relevant and may be considered. Such construction is entitled to "great consideration," *Gill v. Commissioners*, 160 N.C. 176, 76 S.E. 203 (1912) ; or to "due consideration," *Faizan v. Insurance Co.*, 254 N.C. 47, 118 S.E. 2d 303 (1961). It is said to be "strongly persuasive," *Shealy v. Associated Transport*, 252 N.C. 738, 114 S.E. 2d 702 (1960), or even *"prima facie* correct," *In re Vanderbilt University*, 252 N.C. 743, 114 S.E. 2d 655 (1960). Moreover, the construction given a statute by the legislature, while not binding on the courts, is entitled to "great weight." *Kornegay v. Goldsboro*, 180 N.C. 441, 105 S.E. 187 (1920) ; *Sash Co. v. Parker*, 153 N.C. 130, 69 S.E. 1 (1910).

Generally, " . . . the rules to be applied in construing municipal ordinances are the same as those applied in the construction of statutes enacted by the legislature. Ordinances must receive a reasonable construction and application, and the primary rule for their interpretation and construction is that the intention of the municipal legislative body is to be ascertained and given effect." 56 Am. Jur. 2d *Municipal Corporations, Etc.* § 398 (1971). Such is the rule with us. "The rules applicable to the construction of statutes are equally applicable to the construction of municipal ordinances." *Cogdell v. Taylor*, 264 N.C. 424, 142 S.E. 2d 36 (1965). As stated by Justice Sharp in *Bryan v. Wilson*, 259 N.C. 107, 130 S.E. 2d 68 (1963) : "The basic rule for the construction of ordinances is to ascertain and effectuate the intention of the municipal legislative body."

[4] Applying the foregoing principles to the construction of Section 9C of the Zoning Ordinance in question, we conclude that the intent of the Asheville City Council when it adopted said ordinance is accurately reflected by its own interpretation thereof, to wit: The term "owner" connotes not only the absolute owner of the property but also the equitable owner, or prospective vendee.

This interpretation accords with decisions elsewhere construing the term "owner" with respect to applications for building permits. In *Scheer v. Weis*, 13 Wis. 2d 408, 108 N. W. 2d 523 (1961), the applicant for a building permit to construct a dwelling on certain lots had entered into a contract to purchase the lots in question. The plaintiff owned land across the street and sought an injunction to restrain the issuance of the permit. The ordinance required the application to be made "by the owner or his agent." Held: "The vendee under a contract to purchase land is the equitable owner and is the 'owner' for many purposes. We think that the vendee is the owner for the purpose of applying for a building permit under the village ordinance." See also 62 C.J.S. *Municipal Corporations* § 227(3)c (1949): "Only a person having a right to erect the structure for which a building permit is sought is entitled thereto, but the application need not be made by the absolute owner of the property. . . . In a proper case it may be made by a person having only a contract to purchase the property if he has the consent and approval of the owner. . . ."

For the reasons stated we think the trial judge's conclusion that the word "owner" was not intended by the Asheville City Council to be restricted to the absolute owner of the property and that The Kingston Corporation legally qualified as "owner" within the meaning and intent of Section 9C of the Zoning Ordinance, was correct and should be upheld.

*Lee v. Board of Adjustment*, 226 N.C. 107, 37 S.E. 2d 128 (1946), strongly relied on by plaintiffs, is factually distinguishable. There, a municipal board of adjustment granted a variance permit on the ground that to reject the permit would work a great hardship on the applicant. It was held that the board of adjustment had, in effect, amended the zoning ordinance, thereby exceeding its authority. As an alternative ground for decision the court stated that an optionee cannot successfully apply for a variance permit since he "possesses no present right to erect a building on the lot described in his contract. To withhold from him a permit to do what he has no present right to do cannot, in law, impose an 'undue and unnecessary' hardship upon him." Plaintiffs rely on this portion of the decision, but to no avail. The applicant in *Lee* was *not required* to be the "owner" of the land. In addition, the applicant there was merely an optionee, not a prospective vendee under a binding contract of sale. Plaintiffs' second assignment of error is overruled.

Plaintiffs having failed to show facts entitling them to the relief sought, the action was properly dismissed.

Affirmed.