## PAUL D. SHAPERO, TRUSTEE *v.* ZONING BOARD OF THE CITY OF STAMFORD ET AL.
### (11898)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued December 6, 1983—decision released February 28, 1984

*Edward J. Frattaroli,* assistant corporation counsel, with whom were *William J. Hennessey, Jr.,* and, on the brief, *P. Benedict Fraser,* corporation counsel, for the appellants (defendants).

*Richard Blumenthal,* with whom, on the brief, was *Jeffrey C. Moore,* for the appellee (plaintiff).

PETERS, J. This appeal, like the appeal in *Vartuli* v. *Sotire,* 192 Conn. 353, 472 A.2d 336 (1984), decided today, presents the question whether the Coastal Management Act requires the automatic approval of a coastal site plan when a zoning board fails to act within the sixty-five day statutory period for decision. This appeal also raises an additional issue, not present in the *Vartuli* cases, concerning the effective date of an amendment to the Stamford zoning regulations.

The plaintiff, Paul D. Shapero, acting as trustee for the benefit of a group of individuals interested in the development of certain property on the Stamford waterfront, brought this action against the defendant Zoning Board of the City of Stamford (zoning board) and the defendant James J. Sotire, the Stamford Building Inspector and Zoning Enforcement Officer. The plaintiff sought two writs of mandamus: (1) directing the zoning board to approve his application for coastal site plan review; and (2) directing Sotire to issue a building permit for the plaintiff's proposed project. After a hearing, the trial court granted both writs. From that judgment the defendants appeal.

The facts, as revealed by the trial court's memorandum of decision, are essentially undisputed. On January 25, 1982, the plaintiff filed an application for coastal

site plan review with the defendant zoning board pursuant to General Statutes § 22a-109. On January 29, 1982, he filed plans for the foundation of the project with the Stamford building inspector, the defendant Sotire. At the time the plaintiff filed his application and foundation plans, the proposed project complied with all Stamford zoning regulations for the M-G zone in which the property was located. On February 2, 1982, however, an amendment to the zoning regulations took effect, imposing additional height and area restrictions which would, if applied to the plaintiff's proposal, prohibit construction of the building in accordance with the plans submitted.

Following the submission of the plaintiff's application, the zoning board held its first regular meeting on February 1, 1982. The zoning board did not conduct a hearing on the application, and took no further action until July 13, 1982, when it denied the application in reliance on the February 2, 1982 zoning amendment.

The plaintiff initiated this mandamus action on July 29, 1982. He claimed that the defendant zoning board was required, as a matter of law, to approve his coastal site plan application because the board had failed to render its decision within the sixty-five day period set forth in General Statutes §§ 8-7d (b)[1] and 22a-109 (e).[2] He claimed furthermore that the defendant Sotire was

[1] General Statutes § 8-7d (b) provides: "Whenever the approval of a site plan is the only requirement to be met or remaining to be met under the zoning regulations for a proposed building, use or structure, a decision on an application for approval of such site plan shall be rendered within sixty-five days after receipt of such site plan. The applicant may consent to one or more extensions of such period, provided the total period of any such extension or extensions shall not exceed two further sixty-five-day periods, or may withdraw such plan."

[2] General Statutes § 22a-109 (e) provides: "The coastal site plan review required under this section shall be subject to the same statutory requirements as subsection (b) of section 8-7d for the purposes of determining the time limitations on the zoning commission in reaching a final decision."

required to issue the requested building permit because the coastal site plan had been approved by operation of law and because the proposed building met all of the applicable local zoning requirements. With respect to the zoning regulations, the plaintiff claimed that a savings clause, in effect at the time he filed his application, exempted his project from the more restrictive zoning amendment subsequently enacted. The trial court agreed with all of the plaintiff's claims and granted the requested writs.

On appeal, both defendants claim that the trial court erred in holding that § 22a-109 (e) mandates automatic approval of a coastal site plan upon the expiration of the sixty-five day period for decision. The defendant Sotire claims, in addition, that the court erred in holding the plaintiff's proposed project complied with applicable zoning regulations; and in holding that the plaintiff, a contract purchaser of several adjoining pieces of property who had not yet acquired title to the entire parcel, was eligible for a building permit. We find no error.

I

Our decision today in *Vartuli* v. *Sotire,* 192 Conn. 353, 357–58, 472 A.2d 336 (1984), is dispositive of the defendants' first claim of error. As the trial court correctly ruled, § 22a-109 (e) imposes a mandatory sixty-five day time limit on the local zoning board's review of a coastal site plan. Any application not expressly denied or modified within the statutory period is deemed approved by operation of law. The plaintiff's application was received by the zoning board on February 1, 1982, at its first regular meeting following the submission of the application. General Statutes § 8-7d (c). The sixty-five day period for decision expired on April 6, 1982, and the zoning board therefore had no authority to deny the application when it purported to do so on July 13,

1982. Accordingly, the trial court did not err in ordering the zoning board to rescind its denial and issue an approval of the plaintiff's coastal site plan.

## II

Although the sixty-five day rule is dispositive of all the issues with respect to the defendant zoning board, the parties are in agreement that the defendant Sotire cannot be compelled, by writ of mandamus, to issue a building permit for the plaintiff's project unless the proposed building complies with all applicable zoning regulations. This additional requirement is imposed by General Statutes § 8-3 (f),[3] which expressly prohibits the issuance of a building permit unless the proposed building "is in conformity with such [zoning] regulations . . . ."

In the defendant Sotire's second claim of error he contends that the trial court erred in concluding that the plaintiff's proposed project did comply with applicable zoning regulations. It is conceded that, if the plaintiff's foundation plans filed on January 29, 1982, are governed by the Stamford zoning regulations as amended February 2, 1982, then the plaintiff would not have been entitled to a building permit. The defendant claims that the savings clause which was in effect on January 29, 1982, did not serve to exempt the plaintiff from the new February restrictions.

Until some time in January or February of 1982, the Stamford zoning regulations contained a savings clause which provided that amendments to the zoning regulations would not be applied to any building for which, on the effective date of the amended regulations either

[3] General Statutes § 8-3 (f) provides: "No building permit shall be issued for a building, use or structure subject to the zoning regulations of a municipality without certification in writing by the official charged with the enforcement of such regulations that such building, use or structure is in conformity with such regulations or is a valid nonconforming use under such regulations."

a building permit had been granted or building plans had been filed with the zoning enforcement officer.[4] Under this savings clause, the plaintiff's project would be exempt from the February 2 zoning amendment. The savings clause was subsequently amended, however, to provide an exception only for those buildings for which a building permit or a foundation permit had been granted before the effective date of the amended zoning regulation.[5] Because we agree with the trial court that the original savings clause remained in effect on January 29, 1982, and thereby exempted the building from the February 2 restrictions, the defendant's second claim of error must fail.

Most of the history of the adoption of the amended savings clause is undisputed. The zoning board originally voted to amend the savings clause on October 26, 1981. Notice of the zoning board's adoption of the amended savings clause was published in the Stamford Advocate on October 30, 1981, stating that the amendment would take effect on November 10, 1981. On November 9, 1981, however, a petition in opposition to the amendment was filed with the zoning board. Pur-

[4] Former § 17c of the Stamford Zoning Regulations provided: "C-Nothing herein contained shall require any change in the plans, construction, size or designated use of a building for which a building permit has been granted or for which plans were on file with the Zoning Enforcement Officer before the effective date of these Regulations or any subsequent amendments thereto when construction from such plans shall have been started within six (6) months of the granting of such building permit."

[5] Section 17c of the Stamford Zoning Regulations, as amended, provides: "Nothing herein contained shall require any change in the plans, construction, size or designated use of a building for which a building permit or foundation permit has been granted prior to the effective date of these regulations or any subsequent amendments thereto, provided that construction from such plans shall have been started within six months of the granting of such permit, provided further that if only a foundation permit has been granted, a full building permit must be granted within six months from the date of the foundation permit."

suant to § 553.2 of the Stamford Charter,[6] this petition rendered the zoning board's adoption of the amendment of "no force and effect," and referred it, for further consideration, to the Stamford board of representatives. The board was required to act on the referral at or before its second regularly scheduled meeting following the referral, with the proviso that "[t]he failure by the Board of Representatives either to approve or reject the amendment within the above time limit [would] be deemed as approval of the Zoning Board's decision." Stamford Charter § 553.2. Section 555 of the charter further required the board of representatives to file a certificate with the town clerk giving notice of its action or inaction.

Following the referral of the amended savings clause to the board of representatives, the board held meetings on December 7, 15 and 19, 1981, January 11 and 19, 1982, and February 1, 1982. The board took only two votes with respect to the proposed amendment during this period. At its regular meeting on January 11, 1982, it voted to table consideration of the amendment to the savings clause. At its next regular meeting on February 1, 1982, it voted not to remove the amend-

---

[6] Section 553.2 of the Stamford Charter provides in part: "Sec. 553.2. REFFERRAL TO BOARD OF REPRESENTATIVES BY OPPONENTS OR PROPONENTS OF AMENDMENTS TO THE ZONING REGULATIONS, OTHER THAN THE ZONING MAP, AFTER THE EFFECTIVE DATE OF THE MASTER PLAN. After the effective date of the Master Plan, if following a public hearing at which a proposed amendment to the Zoning Regulations, other than the Zoning Map was considered, a petition is filed with the Zoning Board within ten days after the official publication of the Board's decision thereon opposing such decision, such decision with respect to such amendment shall have no force or effect, but the matter shall be referred by the Zoning Board to the Board of Representatives within twenty days after such official publication, together with written findings, recommendations, and reasons. The Board of Representatives shall approve or reject any such proposed amendment at or before its second regularly scheduled meeting following such referral. The failure by the Board of Representatives either to approve or reject said amendment within the above time limit shall be deemed as approval of the Zoning Board's decision."

ment from the table and agreed that the zoning board should be notified that the board had taken no action, and that the decision of the zoning board had prevailed. Accordingly, on February 22, 1982, the board certified to the town clerk its approval of the amendment by inaction.

The board's failure to consider the proposed amendment until its January and February meetings does not definitively establish the effective date of the amended savings clause. Under the charter, the amendment would have been approved automatically had the board taken no action at its second regularly scheduled meeting following referral. The effective date of the amended savings clause therefore depends upon when the board held regularly scheduled meetings.

The trial court found, upon examination of § 202 of the Stamford Charter, which distinguishes among regular, organizational and special meetings,[7] that in December there had been no regularly scheduled board meetings, the board having conducted instead two organizational meetings on December 7 and 19, 1981, and a special meeting on December 15, 1981. Because

---

[7] Section 202 of the Stamford Charter provides: "Sec. 202. MEETINGS. The Board of Representatives, in addition to its Organization Meeting, shall hold regular meetings on the first Monday of each month. The Mayor or President of the Board of Representatives, or any ten members may call a Special Meeting by causing a written notice thereof, specifying the time, place and purposes of the meeting, to be served upon each member personally, or left at his usual place of abode, in either case at least twenty-four (24) hours before the time fixed for such meeting, or forwarded by mail directed to his place of business or residence at least seventy-two (72) hours before the time fixed for such meeting. No business shall be transacted at a Special Meeting which is not within the purposes of the Call. Sworn return of said service of the Special Meeting shall be filed with the person issuing the Call, or with the Clerk if more than one person shall issue the Call, and shall be incorporated in the minutes of that Special Meeting. No action taken at any Special Meeting shall be invalid because of any inadvertent defect in the service of the notice thereof, or in the return of notice."

the first two regularly scheduled board meetings following the referral, therefore, took place on January 11, 1982, and February 1, 1982, the court concluded that the amended savings clause did not take effect until after the plaintiff had filed his plans with the defendant Sotire on January 29, 1982.

The defendant Sotire takes issue only with the trial court's characterization of the December 15, 1981 meeting as a special meeting. If, as Sotire claims, the court should have found that meeting to be the regularly scheduled December meeting, then the amended savings clause took effect at the January 11, 1982 meeting, when the board failed to act on the referral, and governs the plaintiff's January 29, 1982 filing. We disagree with Sotire's claim.

The defendant contends that the charter requirement that the board of representatives conduct at least one regular monthly meeting, coupled with a statement by the board president in the minutes of the December 7 meeting that "I will entertain a motion now that the next board meeting, our regular December meeting, will be on the 15th of December," compels the conclusion that there was a regular meeting on December 15, 1981. In order to support the trial court's finding, the plaintiff relies instead on the caption of the minutes of December 15, 1981, designating that meeting as "special," the limited agenda of the December 15 meeting, statements recorded in the minutes of the February 1, 1982 meeting indicating the understanding of the board that its failure to act on the savings clause amendment at the February meeting resulted in its automatic approval, and the board's failure to certify its approval by inaction until February 22, 1982.

The proper characterization of the board of representatives' meeting on December 15, 1981, is essentially a question of fact to be determined by the trial court.

We may not disturb the trial court's resolution of conflicting evidence unless the factual finding is clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980); Practice Book § 3060D. Having reviewed the evidence before the trial court, we cannot say that the court clearly erred in the factual inference that it drew from the record. The defendant, therefore, cannot prevail on his second claim of error.

### III

Finally, the defendant Sotire claims that even if the plaintiff's plan met all other applicable zoning and coastal management requirements, he could not issue a building permit because the map submitted in connection with plaintiff's plans showed internal lot lines, indicating that several adjoining pieces of property had not yet been consolidated in the hands of a single owner. In essence, the defendant claims that the plaintiff, a contract purchaser of the subject parcels, had no standing to apply for a building permit. This contention is without merit.

The plaintiff, having executed binding contracts to purchase the several adjoining lots depicted in his application, was vested with equitable title to the entire tract. *Lanna* v. *Greene,* 175 Conn. 453, 461, 399 A.2d 837 (1978). We have previously held that a contract purchaser of real property, such as this plaintiff, has sufficient interest in the property to have standing to apply for a special exception or zoning variance. *Shulman* v. *Zoning Board of Appeals,* 154 Conn. 426, 431, 226 A.2d 380 (1967); *Goldreyer* v. *Board of Zoning Appeals,* 144 Conn. 641, 645–46, 136 A.2d 789 (1957). The defendant Sotire has articulated no reason for applying a different and more stringent notion of standing to limit the parties who are qualified to request a building permit, nor do we perceive any basis for such a distinction.

Courts of other jurisdictions which have considered this question have likewise concluded that a contract purchaser, who is the equitable owner of property, is qualified to apply for a building permit. *MacPherson* v. *Asheville,* 283 N.C. 299, 308, 196 S.E.2d 200 (1973); *Scheer* v. *Weis,* 13 Wis. 2d 408, 413, 108 N.W.2d 523 (1961). See also *Western Pride Builders, Inc.* v. *Berwyn,* 99 Ill. App. 2d 250, 252–53, 240 N.E.2d 269 (1968). The trial court was, therefore, correct in rejecting the defendant's final claim.

There is no error.

In this opinion the other judges concurred.