[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These two consolidated cases are appeals from a decision of the Greenwich Planning Zoning Commission ("Commission,") denying the plaintiffs application for permission to connect to the public sewer system.
The unimproved property which is the subject of this appeal has been a separate lot since 1938, and has been owned by the Plaintiff, Charles Mackall, since 1938. The Plaintiff, Joel Lutzker, is the contract purchaser of the property.
Joel Lutzker and his wife, Chris Lutzker, would pay the entire cost of the approximately 1,700 foot extension of the sewer line.
The property is a vacant lot fronting on Long Island Sound. The property contains 1.8 acres and is located in a R-20 residential zone, which permits 20,000 square foot lots. The procedure for connection to the public sewer is governed by Section 269a of the Greenwich Charter. That section reads as follows:
Sec. 269a. Connections.
 (a) Definitions: As used in this section the following terms CT Page 11600 have the following meanings:
 "Planned Sewered Area" — Those areas of the Town which were designed to be included within the capacity of the sewer plant, which areas include areas already sewered, areas which may require sewering and areas for which growth is planned, which growth may require sewering, all as shown on that certain map known as the 1989 Sewer Boundary Map dated November 1, 1989; Revision 3, November 20, 1990 on file in the office of the Commissioner.
 "Non-Sewered Area" -Those areas of the Town planned not to be included within the present capacity of the sewer plant as presently designed, in which areas, because of larger lot zones and/or soil types, it is planned that sewerage disposal will be onsite and not a burden on the sewer plant or the waters of Long Island Sound, all as shown on said aforesaid map.
 (b) Purpose. This section recognizes that the preservation of the waters of Long Island Sound are paramount to the best interests of the people of the Town and State and that the directing of unplanned for sewerage to the sewer plant and thus ultimately into the Sound is not the solution under present technology, the capacity of sewer plans being limited and planned capacity should be protected to avoid any possible present or future threat to the quality of the waters of the Sound, and that planned on-site disposal, in the Non-Sewered Area best serves these interests.
 (c) Connections — findings: In the event that any owner of land shall desire to in any way connect into any sewer or sewerage system in the Planned Sewered Area, such owner may petition the Commissioner for a connection permit. The commissioner shall have the authority to allow such land owner to connect with such sewer. In accordance with the purpose set forth in this subsection, the Commissioner shall establish guidelines for sewer connections, which guidelines shall be submitted to the Board of Selectmen for review prior to adoption by the Commissioner.
 (d) If the property to be served by the connection lies within the unplanned for Non-Sewered Area, in which connections are disfavored as not being in the best interests of the public health, safety and welfare, then the Commissioner shall have authority to allow such land owner to connect with such sewer CT Page 11601 only if the Commissioner can make an affirmative finding in writing as to each of the following factors:
1. That the zoning enforcement officer has determined that all existing and planned structures on the property to be serviced through the connection are in conformity with the zoning regulations.
2. That the Director of Health has determined that on-site sewerage disposal cannot be provided.
3. That permitting the connection would not be contravene any law, rule, regulation, condition of policy of the Connecticut Department of Environmental Protection or of any agreement between the Town and said Department, particularly concerning any new construction in whole or part, upon a floodplain, flood hazard area, wetland area, beach, dune or other environmentally sensitive area.
4. That the present future or cumulative effect of the connection will not adversely affect the sewer plant's planned capacity for future growth or shorten its useful life.
5. That the present, future or cumulative effect of the connection will not expose the sewer plant to overload or adversely threaten the quality of the waters of the Sound.
6. That the Planning and Zoning Commission or its designee has determined affirmatively in writing that the present, future or cumulative effect of permitting the connection will not adversely affect the Town Plan of Conservation and Development or other Town planning or development plans.
7. That permitting the connection will not adversely affect the sewerage system, the Town's efforts to decrease infiltration and inflow or burden maintenance. (RTM 6/10/1991; RTM 10/28/1996.)
An owner of land outside of the sewer boundary can extend the sewer to his own property, at the landowners expense.
 The Town of Greenwich, Connecticut Sewer Connection policy, reads in part, as follows: When a Town sewer is not available as defined above to service the property requesting to CT Page 11602 connect, the property owner has the following options:
OPTION 1: Petition the Commissioner of Public Works for the Town to extend the Town's sewer system to service the property in question, or
OPTION 2: Petition the Commissioner of Public Works for approval to extend the Town public sewer at the petitioners' expense.
If Option 2 is selected, the petitioner must agree to do the following at his expense:
 1. Hire a professional engineer to design the extended sewer in accordance with Town, State, and Federal standards and specifications.
 2. Submit the final plans to both the Sewer and Engineering Divisions of the Department of Public Works for final, signed off approval by the Sewer Superintendent and the Chief Engineer.
3. Provide the Town wifh any necessary easements.
 4. Agree to turn ownership of the extended sewer over to the Town with no restrictions on its use. All documents necessary to legally convey the extended sewer over to the Town shall be approved by the Town's Law Department and all Town agencies and governing bodies that must accept the sewer prior to a sewer permit being issued.
 5. Have the sewer installed in accordance with the plans approved by both the Sewer Superintendent and the Chief Engineer.
The Sewer Connection Policy was approved by the Board of Selectman on March 25, 1997.
The plaintiffs selected and proceeded in accordance with Option 2.
It is the plaintiff's position that the defendant Commission's failure to approve the extension of the sewer line was arbitrary and unreasonable and that since the Health Department will not approve a septic system for the property the denial of a sewer connection amounts to confiscation and an unconstitutional taking of a valuable building lot. CT Page 11603
The court finds, for the reasons set forth hereafter, that the Commission exceeded "the authority granted by Section 269a(d)6 of the Charter of the Town of Greenwich.
At the December 9, 1997 Public Hearing before the Commission, Anthony L. D'Andrea PE LS, a principal in the engineering firm of Rocco V. D'Andrea, Inc., testified that he was retained by the plaintiffs to develop the property as a single family residence. He stated that the plans for the proposed dwelling will not require or anticipate any variances of the zoning regulations.
On June 23, 1992, the Commission reviewed a lot split/subdivision/re-subdivision application from Plaintiff Mackall and determined that there was no merger of lots 26 and 27, both owned, at the time, by plaintiff Mackall. The lot which is the subject of this appeal is lot 27.
The letter to the applicant in 1992 advised the applicant that its decision in no way confirms present conformance with applicable regulations such as zoning, health, or environmental.
Testing on the subject property has determined, to the satisfaction of the Greenwich Health Department, that a septic system which conformed to the Public Health Code, could not be built on the lot. Over a period of years, testing was performed by Rocco V. D'Andrea Inc. and earlier by S E Minor Inc., both reputable Greenwich engineering firms. Numerous test holes were dug in the presence of Greenwich Public Health Department officials. Kathleen Purches, the former environmental supervisor of the Greenwich Health Department, concluded by a letter to Mr. Mackall, dated October 11, 1994, that a subsurface sewerage disposal system could not be constructed on the site. After further investigation in 1997 by the Health Department into the feasibility of a septic system on the site, the 1994 determination was conformed.
Caroline C. Baisley, Director of the Division of Environmental Health, in a July 8, 1997 memorandum to a Marcos Madrid, Commissioner of Public Works states in part "therefore, based on soil data information it would not be feasible to install an on site sewage disposable system on this lot." She states that the soil conditions can not comply with Section 19-13-B 103(e)(a) 3 of the State of Connecticut Public Health Code. CT Page 11604
In an October 15, 1997 letter to Anthony L. D'Andrea, from Micheal S. Long, R.S., Environmental Health Supervisor, Department of Health, Mr. Long states, in part, as follows:
"After reviewing the plan it was evident that approval for septic system installation could not be granted for two reasons. The first being that the requirement of a minimum depth to ledge of 24 inches cannot be met. The State of Connecticut Public Health Code requires at least two feet of naturally occurring soils above ledge in the area of the system. The second is the inability to meet the Minimum Leaching System Spread (MLSS) requirements of the Code. The Code requires a minimum length along an elevation to properly distribute the effluent. This design cannot meet the minimum spread because of the exposed ledge downgrade of the proposed system. Neither of these requirements can be waived for a new septic system design.
Although site improvements could be made, they could only be applied to the areas with more than two feet of naturally occurring soil. In review of this septic design and previous designs (1994), site improvements would not enable compliance with the MLSS requirements of the Code. Therefore, based on these findings, this lot cannot support an on-site sewage disposal system."
Without the approval from the Greenwich Health Department, no septic system could be constructed on the lot. Mr. Anthony D'Andrea, after further studies, concurred in the finding of the Health Department that a septic system could not be constructed even for a two bedroom house. This prompted exploration of whether the sewer line could be extended to the lot.
After further studies, Mr. D'Andrea proposed atwo inch sewer line, to be paid for by Mr. and Mrs. Lutzker. The line would be a force main for use only for the subject property with insufficient capacity for others to tie into the line.
The line would run about 1,700 feet from Indian Harbor Drive, along Oneida Drive and Lakewood Circle to the subject property. The sewer line is proposed to be located within the public right of way and the Mackall property has easement rights to use the road for locating the sewer.
The Commission continued the December 9, 1997 Public Hearing CT Page 11605 until January 6, 1998. In the interim, the Commission decided to retain a civil engineer to review the plan. The Indian Harbor Home Owners Association also retained an engineer. An attorney representing Mr. Mrs. Lutzker, by letter dated December 29, 1997, objected to the Commission making its own determination of a feasibility of a septic system on the property. In the December 29, 1997 letter the attorney states, in part, "We take strong exception to this action of the Commission. We submit the Commission is attempting to extend its jurisdiction well beyond the statutory authority granted to it under Section 269a of the Greenwich Charter."
While neither engineer concluded that there were other specific alternatives, each indicated that an on-site septic system might be possible with further testing. At the conclusion of the testimony of the engineers retained by the Commission and the Indian Harbor Association, Mr. D'Andrea commented "I would like to make my initial comment that it is interesting to know that each of the engineers consulted found it appropriate not to dig test holes, yet the people that are concerned think that the Health Department hasn't had enough time to consider the data. Isn't that interesting? They have done in a couple of days what we have done in over a year with the Health Department."
The Greenwich Commissioner of Public Works, Marcos Madrid, by letter dated November 13, 1997 determined that the Board of Selectman has approved the Sewer Commission Policy on March 25, 1997, that the proposed connection would not adversely affect the planned capacity for future growth of the sewer plant. His letter further stated that the affect of the proposed connection will not expose the sewer plant to overload or adversely threaten the quality of the waters of Long Island Sound. The Commissioner of Public Works sent a memorandum to the Town Planner, dated November 14, 1997, advising that the Makell/Lutzker sewer connection does not require Municipal Improvement.
By letter, dated November 10, 1997, the Greenwich Inland Wetlands and Watercourse Agency approved the construction of a residential dwelling, with conditions.
A memorandum from the Greenwich Director of Health to the Town Planner, dated November 18, 1997, states "Under the current regulations governing an extension of sewering outside the sewer district, only the Commissioner of Public Works has authority to make a decision on this matter." CT Page 11606
The Health Department, the Town Engineer arid the Department of Public Works had approved connecting the property to the public sewer by constructing the single user sewer line.
There are no minutes or transcripts of the Commission discussions, deliberation and vote on this matter.
The record contains a May 19, 1998 correspondence from Town Planner, Diane Fox to Anthony D'Andrea outlining a resolution adopted by the Commission denying the application. The Commissions stated reasons for denial of the application are that (1) the applicant has not demonstrated sufficient or exhaustive sampling of the site for a conventional septic system; (2) the Commission is not convinced that all other feasible design alternatives have been explored by the applicant; (3) the Commission finds the testimony given by the two other engineers that there are reasonable, prudent and feasible alternatives which have not been explored by the applicant to assure, beyond a reasonable doubt, that no type of alternative septic system can be built on site; (4) the Commission finds that the site was not fully explored for other testing areas for alternative systems, and other engineering alternatives may be available without breaching the boundaries of the Sewer Boundary Map; (5) a finding cannot be made therefore from an engineering perspective that septic can or cannot be located on site and the State DEP exceptions have not been fully explored to determine what systems may be approved by the state, beyond local health department authority; and (6) the Commission finds that the proposed development would extend the 1,700 feet of sewer line from a public road, Indian Harbor Drive, into a private association, requiring 1,700 feet of blasting and trenching of a narrow, private road for installation of said line, which is well beyond the limits of the sewer boundary area as approved and adopted by the RTM and shown on an approved and recorded Sewer Boundary Map dated 1998, Rev. 1990.
The above referred to May 19, 1998 letter further states as follows:
"Whereas the Commission finds that such an extension is not in conformance with the Plan of Conservation and Development 1998 per sec. 269(a) of the Town Charter, is not in keeping with the character and nature of this area which is all on individual septic-system, and is not in conformance with the goals and CT Page 11607 objections of the 1998 Plan of Conservation and Development, approved by the RTM. This plan reinforces the limits of the sewer boundary area mop which establishes the Planned Sewer Area and areas not planned to be sewered and, assuming present zoning patterns was used as the basis for designing the capacity of the recently upgraded town wastewater treatment plant."
There was precious little discussion, if any, at both Public Hearings regarding the Town Plan of Conservation and Development or other Town Planning or development plans, as referenced in Charter Section 269a(d)6.
When a Planning and Zoning Commission reviews an application for conformity with the plan of Conservation and Development, it is acting in its capacity as a planning Commission. Section 8-28
of the General Statutes provides that all official actions or decisions of a planning commission shall be published and an appeal is taken from an action or decision of a planning commission pursuant to Section 8-8 of the General Statutes. The standardized appeal procedure also applies to agencies exercising planning commission powers under a special act. Section 8-30aGeneral Statutes. Section 8-8 provides that any person aggrieved by any decision of a board may take an appeal to the Superior Court. Accordingly, even though planning commissions do not customarily review connections to the municipal sewer, the defenilant commission made a final decision on the application before it which is appealable under sections 8-8 and 8-28 GeneralStatutes.
Charles Mackall, Jr. is the owner of the subject lot and Joel Lutzker, is the contract purchaser. Both are "aggrieved persons" and have standing to maintain this appeal. Shapero v. ZoningBoard, 192 Conn. 367, 376.
The defendant Commission has never had a prior application to review a sewer connection in a non-sewered area. Section 269a(d)6 limits the commission's scope of authority to the question of whether the present, future or cumulative effect of permitting the connection will adversely affect the Town Plan of Conservation and Development or other Town planning or development plans. The question for the trial court is whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the agency is required to apply under the regulation giving it jurisdiction to review the application. De Maria v. Enfield Planning ZoningCT Page 11608Commission, 159 Conn. 534, 540.
The court finds that the commission did not state facts which would support a finding that extending the sewer line only to the subject property would adversely effect the Town Plan of Conservation and Development or other Town planning or development plans. It improperly concluded that the mere fact that the subject property was not in the Planned Sewered Area precluded a sewer line connection. It was improper for the Commission to deny the application based on the 1998 version of the Plan of Development, which took effect in March 1998. The application was filed in 1997, and the second public hearing concluded on January 6, 1998.
The Commission denied the application based on speculation that a septic system could be built on the lot. It ignored the lengthy studies and on-site tests performed by Mr. D' Andrea. It ignored the determinations made after extensive studies by the Department of Public Works and the Health Department. It accepted the speculative testimony of the two other engineers who testified at the second public hearing in spite of the fact that these engineers spent only a few days on their study and did not dig test pits in the presence of the Health Department. However, their speculation is meaningless, because in the last analysis no septic system can be approved, regardless of an opinion of any engineer, if the Municipal Health Director refuses to approve it. In addition, Section 269a(d)2 of the Greenwich Charter specifically delegates to the Director of Health the determination of whether an on-site sewerage disposal system can be provided for property in the non-sewered area.
Where the municipal charter prescribes a particular procedure by which a specific act is to be done or a power to be performed, that procedure must be followed for the act to be lawful.Caldrello v. Planning Board, 193 Conn. 387, 391. The Defendant Commission could not deny this application because the applicant had not proven "beyond a reasonable doubt that no type of alternative septic system could be built on site."
The court finds that the Commission exceeded its jurisdiction in engaging the services of an engineer to perform what proved to be a very limited study of the feasibility to construct an on-site septic system on the lot. The engineer's testimony, at the January 6, 1998 public hearing, demonstrated a less than in depth study, leading to his highly vague and speculative CT Page 11609 conclusion that an On-site system could be constructed on the site, after further study.
The Commission's stated reliance on the vague speculative conclusion of the engineer, engaged by the Commission, leads this court to conclude a bad faith intent and predisposition of the Commission to find reasons to reject the application.
The court finds that the Defendant Commission exceeded its legal authority, as set forth in its May 19, 1998 Resolution, to extend the single user sewer connection. Its reasons for denial were improper and inadequate under the provisions of Section 269a(d)6 of the Greenwich Charter.
In light of the court's finding, the court did not address the plaintiffs claim of an unconstitutional taking under both theFifth Amendment of the United States Constitution and ArticleFirst Section 11 of the Connecticut Constitution.
The appeal is sustained and the Commission's decision is hereby declared null and void.
Date at Stamford, Connecticut, this 23rd 1999
Tobin, J.