DAVID L. HARRY, JR., AND WIFE, MARY C. HARRY, PETITIONERS-APPELLANTS V. MECKLENBURG COUNTY, NORTH CAROLINA; THE ZONING BOARD OF ADJUSTMENT OF MECKLENBURG COUNTY, NORTH CAROLINA; LUCINDA S. CHANDLER, AS MEMBER AND CHAIRPERSON OF THE ZONING BOARD OF ADJUSTMENT OF MECKLENBURG COUNTY; WEST P. HUNTER, JR., KAREN LABOVITZ, THOMAS A. MUSSONI, PATRICIA W. NYSTROM, WILLIAM D. SIMMERVILLE, MARGARET STRALEY AND RICHARD S. YODER, AS MEMBERS OF THE BOARD OF ADJUSTMENT OF MECKLENBURG COUNTY, NORTH CAROLINA; ROBERT L. BRANDON, IN HIS CAPACITY AS ZONING ADMINISTRATOR OF MECKLENBURG COUNTY, NORTH CAROLINA; AND TIMOTHY G. KORNEGAY, RESPONDENTS-APPELLEES

No. COA99-476

(Filed 21 December 1999)

### Zoning— principal structures—piers

The Mecklenburg County Board of Adjustment and the trial court erred by deciding and affirming that pier permits should be issued for certain lots on Lake Norman. The only logical construction of the ordinance is that a single family dwelling house is the principal use or structure on a residential building lot in this district, that a pier would constitute an accessory use and structure, and that no accessory use or structure shall be approved, established, or constructed before the principal use is approved. Although the interpretation of the ordinance by those charged with its execution and administration is entitled to deference, the Court of Appeals is not bound by an interpretation contrary to the express purpose of the ordinance.

Appeal by plaintiffs from judgment entered 1 December 1998, and order denying stay entered 3 December 1998, by Judge Marvin K. Gray in Mecklenburg County Superior Court. Heard in the Court of Appeals 7 October 1999.

Respondent Timothy G. Kornegay (Kornegay) contracted to purchase four small lots (the remnant parcels) on Lake Norman from Crescent Resources, Inc. (Crescent). David L. Harry, Jr., and wife, Mary C. Harry (plaintiffs), own a residential lot near the remnant parcels. In a separate action, Mecklenburg County File No. 97-CvS-14726, plaintiffs sought a declaration that the remnant parcels must be held by Crescent Resources, Inc., and its successors in title, as "undeveloped open space" and for no other purpose. The denial of plaintiffs' action for declaratory judgment was affirmed by this Court in a separate opinion filed this date.

On 15 September 1997, Kornegay applied to the Charlotte-Mecklenburg Engineering and Building Standards Department (the Department) for permits to build piers on each of the remnant parcels. On 18 September 1997, the Department issued permits to Kornegay, allowing construction of one pier on each of the remnant parcels. When plaintiffs became aware of the issuance of the permits, they sought to have them revoked. The request for revocation of the permits was denied, and plaintiffs appealed to the Zoning Board of Adjustment of Mecklenburg County (the Board). A hearing was held before the Board on 14 January 1998, but respondent Kornegay was not notified of the hearing. After a hearing, a divided Board voted to revoke the pier permits. At Kornegay's request, and over plaintiffs' objection, the Board voted to rehear the matter, and voted on 11 March 1998 to reverse its prior decision and reinstate the issuance of the pier permits. Plaintiffs petitioned the Mecklenburg County Superior Court for certiorari, mandamus, and a decree revoking the building permits. The trial court issued its judgment on 1 December 1998 affirming the action of the Board. On 3 December 1998, the trial court denied plaintiffs' motion to stay construction of the piers during appeal. This appeal followed.

*The Tryon Legal Group, by Jerry Alan Reese, for plaintiff appellants.*

*Ruff, Bond, Cobb, Wade & Bethune, L.L.P., by James O. Cobb, for all defendant appellees other than Timothy G. Kornegay.*

*Rayburn, Moon & Smith, P.A., by James B. Gatehouse, for defendant appellee Timothy G. Kornegay.*

HORTON, Judge.

Although plaintiffs assign numerous errors to the judgment of the superior court which affirmed the action of the zoning board, the primary question before us is whether a pier may be a "principal structure" within the meaning of the Mecklenburg County Zoning Ordinance. We hold that a pier is not a principal structure within the meaning of the Zoning Ordinance of Mecklenburg County, North Carolina (the Ordinance), and reverse the decision of the superior court.

The Ordinance governs the "development and use of all land and structures in the unincorporated area of Mecklenburg County which is outside of the zoning jurisdiction of any other governmental unit." Section 1.103. The lots here in question were within the area gov-

erned by the Ordinance at all times pertinent hereto. Furthermore, there is no dispute that when the permits were issued, the remnant parcels were located in the single family residential (R-3) zoning district, the highest and most restrictive zoning district under the Ordinance. Section 9.102. The purposes of single family residential districts, according to the Ordinance, are

> to protect and promote the development of single family housing and a limited number of public and institutional uses. The standards for these districts are designed to maintain a suitable environment for family living at various densities to accommodate preferences for different housing types. The R-3 and R-4 districts are directed toward suburban single family living.

Section 9.201. Piers are not listed among the uses permitted by right in the single family districts (Section 9.202), nor are they included among the uses permitted under prescribed conditions (Section 9.203). Accessory uses and structures which are "clearly incidental and related to the permitted principal use or structure on the lot" are permitted in the R-3 district. Section 9.204(1). The Ordinance further provides that an "accessory use or structure may be approved in conjunction with approval of the principal use." However, "[n]o accessory use or structure shall be approved, established, or constructed before the principal use is approved in accordance with these regulations." Section 12.401.

Section 12.515 of the Ordinance sets out special requirements for facilities located on or adjacent to the Catawba River and its impoundments, including Lake Norman. The section provides in pertinent part that the purpose of the section is "to provide *supplemental restrictions* to protect and enhance water quality, safety, and public recreational opportunities on the Catawba River and its impoundments," including Lake Norman. (Emphasis added.) The section contains the portions of the Ordinance upon which the Board and the superior court based their decisions:

> (1) In addition to the uses permitted in the underlying district elsewhere in these regulations, the following uses shall be permitted as of right provided they meet all requirements of this Part *and all other requirements established in these regulations:*
>
> (a) Piers.
>
> . . . .

(7)  Special requirements for other uses along the Catawba River and its impoundments are as follows:

    (a)  all principal structures, except for boathouses, piers, walkways, breakwaters, and marine railways, shall be located at least 40 feet landward from the full pond level[.]

Section 12.515(1) & (7) (emphasis added).

Based on the language of Section 12.515(1) and (7), the Board concluded that

the Zoning Administrator was correct that a pier can be a principle [*sic*] structure as per Code Sections 12.515(1) and (7) of the Mecklenburg County Zoning Ordinance.

Following its thorough review of the matter, the trial court concluded that it "found no errors of law in the record" and affirmed the decisions of the Board. Thus, the question before us is whether the conclusions of the Board and the trial court were correct as a matter of law.

We are to construe municipal ordinances, such as the Zoning Ordinance here in question, "according to the same rules as statutes enacted by the legislature." *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 629, 265 S.E.2d 379, 385, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980). "The basic rule is to ascertain and effectuate the intent of the legislative body . . . . The best indicia of that intent are the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish." *Id.* (citations omitted).

Turning first to the language of the ordinance, we find that "accessory uses and structures" which are "clearly incidental and related to the permitted principal use or structure on the lot" are allowed. Section 9.204(1). A "[p]rincipal building or structure" is defined as a "building or structure containing the primary use of the lot," and "[p]rincipal use" is the "primary purpose or function that a lot serves or is proposed to serve." Section 2.201. While a pier is certainly a "structure," it is clear from the Ordinance that the primary purpose of a lot in the R-3 district is single family housing and the R-3 district is directed toward suburban single family living. Section 9.201. The only logical construction of the Ordinance is that a single family dwelling house is the principal use or structure on a residential building lot in the R-3 district, and that a pier would constitute an

accessory use and structure "incidental" to the primary use of the lot. With regard to accessory uses and structures, the Ordinance also provides that "[n]o accessory use or structure shall be approved, established, or constructed *before* the principal use is approved in accordance with these regulations." Section 12.401 (emphasis added).

Both the Board and the superior court rely on the language of Section 12.515 of the Ordinance to support the conclusion that a pier may be a principal structure within the meaning of the Ordinance. In doing so, they ignore other pertinent language of the Section, which language provides that the purpose of the Section is to provide "supplemental restrictions" on Lake Norman properties. Section 12.515 provides that "[t]he restrictions of this Part shall be *supplemental* to any other standards established in these regulations and governing any individual property on or adjacent to the Catawba River and its impoundments." (Emphasis added.) Piers are among those uses permitted as a matter of right "provided they meet all requirements of this Part and all other requirements established in these regulations[.]" Section 12.515(1). Defendants base their argument on the language of (7)(a) of Section 12.515 which provides that "[a]ll principal structures, except for boathouses, piers, walkways, breakwaters, and marine railways, shall be located at least 40 feet landward from the full pond level[.]"

Defendants argue that the implication of Section 12.515(7)(a) is that piers may be "principal structures." We agree that the subsection is not artfully worded, but do not agree that the language or intention of the drafters was to make the enumerated marine structures "principal" structures within the meaning of the Ordinance. First, the apparent intent of Section 12.515(7)(a) is to make it clear that marine structures, which are normally built in or near the water, need not be set back 40 feet from the water. Second, counsel have not directed our attention to, nor are we able to find, any other provision of the Ordinance which intimates that a pier can be a principal structure. Indeed, the general provisions with regard to a lot in the R-3 district make it clear that a single family residence is the primary use of such lot. Third, the provisions of Section 12.515, by their own terms, are supplemental to "any other standards" established by other provisions of the Ordinance. Giving "supplemental" its plain meaning, the provisions of Section 12.515 are intended to add to, or complete, the preceding sections of the Ordinance, not to replace or modify them.

Finally, the Ordinance itself contains rules which govern its construction. Section 2.101(3) provides that "[i]n the event of any conflict in limitations, requirements, or standards applying to an individual use or structure, the more stringent or restrictive provision shall apply." Even assuming that the provisions of Section 12.515(7) cause a conflict with the restrictions and regulations governing the use of land in the R-3 district, the more "stringent or restrictive" interpretation would be to treat piers as accessory structures, not as principal structures.

We are aware that the interpretation of the Ordinance by those who are charged with execution and administration of the zoning ordinance is entitled to consideration and some deference. *MacPherson v. City of Asheville*, 283 N.C. 299, 307, 196 S.E.2d 200, 206 (1973). Therefore, we have carefully considered the testimony of the Zoning Administrator. However, we are not bound by any interpretation adopted by the Board that is contrary to the express purpose of the Ordinance, particularly as it relates to the purposes of the R-3 district and the uses permitted therein. Consequently, the decision of the Board and the superior court must be reversed.

It is, therefore, ordered that the decision of the Superior Court of Mecklenburg County is reversed and the case is remanded to the Superior Court of Mecklenburg County. The superior court is to enter a judgment reversing the decisions of the Zoning Board of Adjustment of Mecklenburg County which granted pier permits to the defendant Timothy G. Kornegay.

Reversed and remanded.

Judges WYNN and EDMUNDS concur.