REBECCA SHULMAN *v.* ZONING BOARD OF APPEALS
OF THE CITY OF STAMFORD ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued December 7, 1966—decided January 17, 1967

*Julius B. Kuriansky,* with whom was *Joseph P. Zone,* for the appellant (plaintiff).

*Theodore Godlin,* assistant corporation counsel, with whom, on the brief, was *W. Patrick Ryan,* corporation counsel, for the appellee (named defendant).

*Franklin Melzer,* with whom was *James F. Simon,* for the appellee (defendant Twin Lakes, Inc.).

KING, C. J. The defendant zoning board of appeals of the city of Stamford, hereinafter referred to as the board, granted an application of the defendant Twin Lakes, Inc., for a special exception to permit the operation of a swim or tennis club on a tract of land on Haviland Road in Stamford. This appeal was taken by the plaintiff as the owner of property adjoining the premises for which the special exception was granted.

In § 3 (A) (87) of the Stamford zoning regulations, a swim or tennis club is defined as "[a] voluntary or corporate association owned solely by its members, the objectives, pursuits and purposes of which are social or recreational, operating or formed for the purposes of operating a club on a membership basis and not operated for profit, the principal facilities of which shall be a swimming pool or pools and/or tennis court or courts owned by it and maintained on land owned or leased by it, and which may maintain and operate on the same premises such accessory facilities owned by it as are usually provided by a swim or tennis club. Accessory facilities shall not include bowling alleys."

Under the provisions of § 19 (A) (2) of the regulations, the board is required to hear and decide applications for special exceptions in general, which it may grant under certain conditions set forth in § 19 (A) (2) (a). Under § 19 (A) (2) (f), the board

may permit as a special exception the establishment
of a swim or tennis club under the conditions appli-
cable to special exceptions in general together with
additional conditions, set forth in fourteen para-
graphs of subdivision (f), which apply only to the
granting of special exceptions for the establishment
of such clubs. These additional conditions fix mini-
mum and maximum acreage, numerical limitations
on membership, minimum parking facilities, and set-
back and side yard requirements for buildings and
for activity, lounging, and parking areas. They limit
overnight accommodations, lights and loudspeakers,
and they prohibit the sale of alcoholic beverages and
the rental of the facilities to outside organizations
and individuals.

Paragraph 12 of subdivision (f) provides that
"[t]he Zoning Board of Appeals may impose any
other reasonable conditions with regard to the oper-
ation of a swim or tennis club including limitation on
hours of operation and restriction of commercial
facilities."

The only claim briefed in this court which was
raised in the trial court is that, under the quoted
provisions of paragraph 12 of subdivision (f), the
board was required to impose restrictions on the
club's hours of operation, and that its failure so to
do invalidated its grant of the special exception.

The use of the word "may", in paragraph 12 of
subdivision (f), is in itself a clear indication that a
discretionary power, rather than a mandatory duty,
was intended. Throughout the fourteen paragraphs
of conditions comprising subdivision (f), the word
"shall" appears frequently, while the word "may"
appears but twice. The words "shall" and "may"
must be assumed to have been used with discrimina-
tion and with a full awareness of the difference in

their ordinary meanings. *Blake* v. *Meyer,* 145 Conn. 612, 616, 145 A.2d 584; *Rubin* v. *Lipson,* 96 Conn. 281, 283, 114 A. 86. Moreover, there is nothing in the regulations as a whole expressive of any contrary legislative intent. See cases such as *Miller* v. *Phoenix State Bank & Trust Co.,* 138 Conn. 12, 16, 81 A.2d 444.

Although paragraph 12 is placed in a series of standards or conditions which all swim or tennis clubs must meet, it does not itself establish or constitute any standard. Whereas the other paragraphs specify, in precise terms, definite requirements and limitations, paragraph 12 provides that "[t]he Zoning Board of Appeals may impose any other reasonable conditions". This is not, as claimed by the plaintiff, a standard. Rather, it is a delegation of power to the board to impose reasonable conditions as incident to a grant of a special exception. The purpose of this provision is clear. Where, as here, a special exception, rather than a variance, is involved, the board may impose conditions only to the extent allowed by the zoning regulations themselves. *Huhta* v. *Zoning Board of Appeals,* 151 Conn. 694, 697, 202 A.2d 139; *Service Realty Corporation* v. *Planning & Zoning Board of Appeals,* 141 Conn. 632, 636, 109 A.2d 256. Without such a grant of power, the board, in allowing a special exception, would be unable to impose a condition even where one was obviously desirable. But the mere fact that the board was given such a power does not require an exercise of that power in every application coming before the board. Nor can the mere fact that this grant of power was placed among a series of mandatory standards change its plain meaning from a grant of power into a mandatory standard. Indeed, as previously pointed out, its

language is not susceptible of a construction imposing any ascertainable standard. Neither paragraph 12 nor any other portion of the zoning regulations makes any requirement as to hours of operation. The board is authorized to impose reasonable conditions as to the operation of a swim or tennis club, and paragraph 12 merely mentions limitation of hours and restriction of commercial facilities as two conditions which are included in those which the board is authorized to impose. Where, as here, there is a series of mandatory requirements, followed by a grant of general power to impose additional restrictions, expressed in permissive terms, there is, in the language of *Capobinco* v. *Samorak,* 102 Conn. 310, 314, 128 A. 648, a "clear implication of a discretionary jurisdiction conferred, to be assumed or declined as to the authority acting might seem just or advisable".

The court did not err in failing to conclude that the board acted illegally in granting the application without imposing conditions on the club's hours of operation.

This determination would be dispositive of this appeal but for the additional claim, raised for the first time in this court, that the board lacked jurisdiction to consider the application for a special exception because, at the time it was filed, the applicant did not own or lease the land on which it sought to establish the club. Since the claim was first raised in this court, we consider it only to the extent necessary to determine whether the plaintiff has shown, as she claims, a fatal jurisdictional invalidity. Practice Book § 652; see *Krulikowski* v. *Polycast Corporation,* 153 Conn. 661, 664, 220 A.2d 444; *Huhta* v. *Zoning Board of Appeals,* 151 Conn. 694, 698, 202 A.2d 139. More specifically, the plaintiff's claim is

that, for the applicant to qualify as a swim or tennis club within the definition quoted at the beginning of the opinion, it had to be either an owner or a lessee of the land involved.

The general rule, which applies in the absence of a specific provision to the contrary, is that one who has contracted to purchase property has standing to apply for a special exception or a variance governing its use. *Goldreyer* v. *Board of Zoning Appeals,* 144 Conn. 641, 645, 136 A.2d 789; *Burr* v. *Keene,* 105 N.H. 228, 230, 196 A.2d 63; note, 89 A.L.R.2d 663, 669, § 4; see *Winslow* v. *Stamford Zoning Board,* 143 Conn. 381, 386, 122 A.2d 789. Here, it is undisputed that Twin Lakes, Inc., has a contract to purchase the premises from the present owner. This contract, in the absence of a specific provision in the zoning regulations to the contrary, was all which was required.

The plaintiff's claim confounds the requirements for the actual operation of a swim or tennis club with the requirements for a valid application for a special exception to permit the future use of the land for such a club. This is indicated by the quoted portion of the definition describing a swim or tennis club as an association operating "or formed for the purposes of operating" such a club. It may well be that permission for the actual operation of the club cannot be granted unless and until the definitional requirements as to the status of the club as the owner or lessee of the property have been met. But no such requirements are essential to the validity of the application for a special exception.

This conclusion becomes even clearer when the definition is considered as a whole. It contains a provision that "the principal facilities of . . . [such a club] shall be a swimming pool or pools and/or

tennis court or courts owned by it and maintained on land owned or leased by it". The construction of such facilities could not be undertaken without the special exception. Necessarily, their actual construction could not be made a prerequisite to the granting of the special exception, since, without it, they could not be built at all. Compliance with these provisions of the definition is, at most, a prerequisite to the right to commence actual operations as such a club.

The claim that there was a fatal lack of jurisdiction to grant the special exception is without merit.

There is no error.

In this opinion the other judges concurred.