[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff filed an application with the defendant CT Page 9846 commission for a special permit and site plan approval to change twelve legally non conforming residential living units in four buildings into dwelling units having different configurations and locations from that which was pre-existing. Section 6-1.3.1 of the Westport Zoning Regulations requires that such a "transformation" be approved by special permit and site plan review. Section 44-6 of the Regulations requires the commission to consider all of the site plan standards and objectives contained in section 44-5 and requires it to take into consideration the public health, safety and general welfare of the community and expressly authorizes it to "prescribe reasonable conditions and appropriate safeguards to assure the accomplishment of such standards and objectives".
By resolution Number 91-120, the Commission granted the special permit and site plan subject to three conditions to which the plaintiff objects. The plaintiff has carried his objection to this court by timely appeal.
The court heard the testimony of Roy Stillman who stated that the plaintiff 1515 Summer Street Corporation, is a general partner in Westport Village Limited Partnership, which itself owns three condominium units into which the twelve residential units have been converted. As a unit owner, the partnership also owns percentages of the common elements. In addition, the plaintiff owns a 1% equity interest in the limited partnership.
Although the plaintiff's interest in the property is somewhat attenuated, this court finds that the plaintiff has retained a sufficient interest in the property to qualify as an aggrieved party under 8-8 of the General Statutes. Primerica v. Planning and Zoning Commission, 211 Conn. 85 (1989); Loew v. Falsey,144 Conn. 67 (1956).
The plaintiff first claims that conditions number 2, 3 and 10 of the resolution are invalid because they exceed the scope of the defendant's authority. The plaintiff argues that a special permit application which conforms to the existing regulations must be approved and cannot be made to meet standards not contained in the regulations themselves. Further it argues that the defendant cannot impose a condition on a special permit unless authorized by its own regulations.
Condition Number 2. Here the plaintiff claims that the defendant had no power to require it to relocate two parking spaces which had previously existed outdoors and which it planned to continue CT Page 9847 outdoors and place them indoors, in a garage, end to end with two other previously existing parking spaces. The plaintiff argues that since the garage has already been completed, has only one set of garage doors in the front of the building and no outlet in the, rear of the building, implementation of this condition would require redesign of the entire condominium project including installation of a driveway which would violate the coverage limitation contained in the regulations.
The power to regulate by special permit is found in 8-2 of the General Statutes which empowers a zoning commission to grant special permits "subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values". The Westport Zoning Commission has sought to exercise this power in part through the adoption of a preamble to 44-6, supra.
The plaintiff maintains quite correctly that in granting a special permit the commission is limited to determining whether the application satisfies the standards set forth in the regulations and may not impose conditions which alter the standards. Beckish v. Planning and Zoning Commission, 162 Conn. 11, 14 (1971). However, the plaintiff misconstrues the principle by equating it with the more limiting principle which governs site plan review. TLC Development, Inc. v. Planning and Zoning Commission, 215 Conn. 527
(1990). In amending 8-3(g) by enacting Public Act 78-104, the legislature narrowed the power to deny a site plan to situations where it fails to comply with requirements already set forth in the zoning regulations. As the Supreme Court concluded in the TLC Development, Inc. case, supra at 530 n. 2, the effect of Public Act 78-104 was to narrow the scope of the Commission's inquiry into site plans by eliminating considerations that were not specifically articulated in the Zoning Regulations.
This amendment, however, had no effect upon the special permit provisions of Section 8-2 so that a Zoning Commission, pursuant to appropriate regulations, may impose reasonable conditions not specifically articulated in the regulations which are necessary to protect the health, safety, convenience and property values off of the specific site of the project under review. Shulman v. Zoning Board of Appeals, 154 Conn. 426, 429 (1967). While according to the, TLC Development, Inc. case, supra, Goldberg v. Zoning Commission, 173 Conn. 23 (1977) was effectively overruled by Public Act 78-104, its rationale retains vitality with respect to the special permit provisions of 8-2, the relevant portion of which is CT Page 9848 virtually identical to the provision which was involved in that case.
An analysis of the condition in question indicates that all parking spaces are to be placed on the ground floor of the garage of Number 10 Cross Highway in accordance with the site plan submitted by the plaintiff but as revised by the Town's Planning Assistant John Ives. This revision (Item 29) is the operative plan which governs Condition Number 2. It clearly shows four vehicles parked in tandem with vehicles number 3 and 4 parked directly behind vehicles number 7 and 8. The record also indicates that the proposed site plan specified garage doors on the west end of the building only. Thus, the plan does not call for side by side parking nor does it call for the installation of additional garage doors on the east side of the building.
To determine the authority of the Commission to mandate such an arrangement we turn first to the site plan provisions. There we find that there is nothing in these regulations which permits tandem parking. In fact, tandem parking would clearly violate 34-9
which mandates that parking be "designed to avoid unsafe conditions . . . and to provide for the safety and adequacy of access for vehicles". It is obvious that in the absence of a site plan requiring the installation of garage doors at both ends of the building or in the alternative, requiring parallel parking with doors placed on the south side of the building such a requirement would create a dangerously unsafe condition calculated to assuage the concerns of neighboring property owners who disdain the appearance created by outdoor parking.
Moreover, the plaintiff argues that the defendant could not have ordered either of these alternatives because to do so would result in a violation of the coverage requirement of the regulations by requiring a driveway which counts for coverage. This contention is borne out by Exhibit 21 of the record in which Carrie Makeover, a Planner employed by the defendant, stated that "retaining this driveway would have put the site over coverage". This reference was to the fact that in its non conforming state the site contained a driveway that ran from the east side of the garage through the center of the lot. It is thus apparent that this condition finds no support whatsoever in the site plan regulations.
It now remains to be determined whether this condition is authorized under the defendant's special permit power. While broader authority exists under the defendant's special permit CT Page 9849 power, that authority is not unlimited. Shulman v. Zoning Board of Appeals, 154 Conn. 426, 429 (1967). The facts in this case are not altogether unlike the facts involved in Service Realty Corporation v. Planning and Zoning Board of Appeals, 141 Conn. 632
(1954). In that case the condition imposed on the special exception was found to be contrary to the comprehensive plan of zoning in existence in the town. A comprehensive plan of zoning in a municipality is found in the zoning regulations themselves. Whitakker v. Zoning Board of Appeals, 179 Conn. 650, 656 (1980). A condition attached to a special permit cannot be antagonistic to the comprehensive plan, Service Realty Corporation v. Planning and Zoning Board of Appeals, supra at 637. Just as in the Service Realty Corporation case, supra, where the comprehensive plan was designed to promote the relocation of parking from the street to private property, so too in this case the comprehensive plan not only does not permit tandem parking but under 34-9 it actually prohibits it for safety reasons and for inadequacy of access. The defendant may not point to 44-5.3 as the source of such authority. This section merely allows the Commission to evaluate the location, arrangement and adequacy of off-street parking and loading facilities. It does not authorize the creation of tandem parking. An examination of the parking regulations themselves reveals that concealed parking is required only for commercial, retail service or office uses (34-10) and is not required for multi-family dwelling units (34-3). There is no authority for Condition Number 2; therefore it is invalid and of no force and effect.
Condition Number 3. The plaintiff next complains that Condition Number 3 requires the plaintiff to plant a buffer strip consisting of evergreen trees in height and number which exceed its authority. By the terms of Condition Number 3 the plaintiff is ordered to plant buffer landscape in accordance with its site plan as revised on January 6, 1992 by the defendant's planning assistant, John Ives. (Item 29). It calls for the planting of 9 white pines, each 6 feet on center. It also specifies the planting of 10 arborvitae on the southerly boundary and 25 arborvitae on the northerly boundary, each to be planted 4 feet on center. The plaintiff contends that because the height and the distance specifications are set forth in the site plan regulations, the Commission is bound by them.
Section 44-5.4 of the special permit/site plan regulations requires the commission, in reviewing an application for special permit/site plan, to "protect the environmental quality of the site CT Page 9850 and . . . preserve and enhance the adjacent property values". Subsection (e) of that section requires the Commission to evaluate "the location, height and materials of walls, fences, mounds, berms, hedges and plantings so as to insure compatibility with the character of adjacent development, screen parking and loading areas . . . and other such features in accordance with 35, herein". Thus, the special permit process incorporates the planting requirements of 35. Section 35-2.4 governs the requirements for this buffer strip. Quite properly the Commission has specified that type C plants be installed. Section 35-2.4.3 which governs this type of planting sets forth in meticulous detail the characteristics of these plantings. First, it requires that they be at least 8 to 10 feet in height and that evergreen trees be planted 10 feet on center. Since it doesn't take an arborist to know that white pines and arborvitae are evergreen trees there was no authority for the Commission to reduce the distance from 10 feet to 6 feet. Unlike elsewhere in the regulations this section confers no discretion on the Commission. The defendant cannot resort to its special permit power to enlarge the requirements that are set forth in detail in its own regulations. To put it another way, when special permit regulations incorporate site plan regulations by reference a planning and zoning commission may not enlarge the site plan requirements under the guise of special permit regulation. To do so would run counter to the comprehensive plan found in the regulations themselves, Service Realty Corporation v. Planning and Zoning Board of Appeals, supra at 638.
Condition Number 10. Finally, the plaintiff attacks Condition Number 10 which provides as follows: "this is a conditional approval, each and every condition is an integral part of the Commission decision. Should any of the conditions, on appeal from this decision, be found to be void or of no legal effect, then this conditional approval is likewise void. The applicant may refile another application for review".
The plaintiff's position is that this condition is illegal and should be stricken from the approval, thus leaving the special permit approved without these conditions.
Where a portion of the approval granted in a special permit is illegal the issue is whether the illegal portion can be severed from the remainder of the approval which is either unchallenged by the plaintiff or which itself withstands judicial scrutiny. When considering the severability test the question is whether the good part and the bad part are so mutually connected CT Page 9851 and dependent as to indicate an intent on the part of the zoning agency that they should stand or fall together. Mazzolla v. Commissioner of Transportation, 175 Conn. 576, 584 (1978). The question of severability is a question of intent of the agency which of course becomes a judicial question for the court to determine. Burton v. Hartford, 144 Conn. 80, 89 (1956). There is authority for the proposition that under certain circumstances the court may modify an approval by striking the illegal conditions and leaving the remainder of the approval intact. Beckish v. Planning and Zoning Commission, 162 Conn. 11 (1971). Pecora v. Zoning Commission, 145 Conn. 435 (1958).
As a rule of statutory construction, where a zoning ordinance contains a provision to the effect that the invalidity or inoperability of a section shall not affect the validity of the ordinance as a whole, such a provision replaces a presumption that the ordinance was meant to be indivisible with the presumption of separability, Langer v. Planning and Zoning Commission, 163 Conn. 453,459 (1972). In evaluating this condition its true character must be determined. Normally, a condition imposed on a special permit or site plan approval directs the performance of an act or orders the applicant to refrain from doing an act. This condition falls into neither category and therefore is nothing more than an expression of the Commission's intent that the conditions not be severable. To this extent it may be regarded as the converse of a severability clause. There is no sound reason why this Commission should not have an opportunity to reconsider the conditions invalidated by this decision and fashion reasonable alternatives which are sanctioned by the regulations.
The appeal is sustained. Pursuant to section 8-8(1) the defendant is ordered to proceed in accordance with this decision.
In view of this ruling there is no need for the court to decide number CV91 0121078 S.
MOTTOLESE, J.