[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant matter is an appeal from a denial of a zone change application for a 5.4 acre parcel located on the easterly side of Danbury Road (commonly known as Route 7) in Wilton, Connecticut. The main issue presented is whether based upon the totality of the circumstances as reflected in the record did the Planning Zoning Commission abuse its discretion and act in an arbitrary, illegal and capricious manner with regard to the requested change? A corollary issue is whether or not the denial of re-zoning amounted to practical confiscation.
The court has reviewed the entire record, taken evidence on November 21, 1997 and viewed the subject premises. The following will constitute the courts findings and memorandum of decision.
This appeal concerns a parcel containing 5.431 ± acres located on the easterly side of Danbury Road in the Town of CT Page 496 Wilton, Connecticut. Said parcel is actually made up of two sub-parcels containing 2.41 acres and 3.02 acres shown on the assessors map # 758 as lots 34 and 35 respectively, with a designated street address as 306 Danbury Road.
The owner of the property is one Einer Moll and the contract purchaser and applicant/plaintiff herein is one Danbury Road Limited Partnership.
The application, under Docket #96242, sought to change the subject property from its existing RA-1 designated or single family one acre zone to a D.R.D. or multi-family design residence district. The purpose of the zone change was to develop 12 single family residences in a planned unit development subject to special permit and site plan review. At the time the application was filed, the plaintiff partnership was the contract purchaser for the property and said contract remains in effect presently, the court having taken the uncontradicted testimony of Robert Scinto, a general partner. In furtherance of the contract to purchase and the intended plan of development plaintiff expended sums of money for planning, architectural drawings and engineering, site, traffic and otherwise. The evidence produced at the hearing clearly established a substantial investment by and impact on the plaintiff.
Having made the findings that plaintiff was and is the contract purchaser and has a substantial financial investment in the subject property, the court finds that the plaintiff has met its burden of establishing aggrievement and standing. Shapero v.Zoning Board of Stamford, 192 Conn. 367, 376; Shulman v. ZoningBoard of Appeals, 154 Conn. 426; RR Pool Home, Inc. v. ZoningBoard of Appeals, 43 Conn. App. 563, 569, 570.
The court makes the following specific findings as to the subject property; the application therefore; the Wilton Zoning Regulations and the Town Plan of Development or Plan of Conservation and Development. The property is irregular in-shape and contains 5.431 ± acres with an upward sloping topography west to east; has 1,045 feet of frontage on Route 7 and is a short distance north of the Route 33/Route 7 intersection. The property is currently improved with a small ranch style dwelling, built around 1947 and a detached shed. The land is heavily wooded, with significant ledge and an area of wetlands to the south-east. The grade rises sharply in an easterly direction along most of the Route 7 frontage to more CT Page 497 moderate grades, and three separate knolls, across the central section. The land adjacent to the east rises again in an easterly direction, and is heavily wooded. It adjoins the Crossways Shopping Center to the south, and it is immediately across the road from the former Emery Air Freight property which is zoned Designed Enterprise (DE-5). A short distance south of the Route 33/Route 7 intersection part of a parcel on the easterly side of Route 7 is zoned for Designed Residence (DRD). Land on the opposite side of Route 7 near the subject property is zoned for General Business (GB) and the Wilton Center Zone which allows for retail and commercial uses. The land behind the subject property is in the 2-acre Residential Zone (R-2A). These R-2A residential properties front on Powder Horn Hill Road, a residential road distinctly different from Route 7. Unlike those properties the subject property has no access to this residential street. Information as to the site, the surrounding area, zoning and proposed designations in the Plan of Development are contained in the report from David Portman of Frederick P. Clark Associates dated November 19, 1996 contained in Exhibit B in the record (hereafter called "the Clark Report").
The zone change application proposed changing the 5.43 acres from the single-family residence zone (R-1A) to Designed Residence (DRD). The uses permitted in the single-family residence districts which are permitted as a matter of right are (1) single-family detached dwellings, (2) farms, and (3) open space, both public and private, and public parks (Section 29-5A (2) Wilton Zoning Regulations, Exhibit K). There are several multi-family residential districts under the Wilton Zoning Regulations, but the least density is in Designed Residence, which allows (1) single detached dwellings, (2) attached dwellings, (3) open space and parks, and (4) affordable housing units in accordance with specific provisions of the regulations (Exhibit K, pages 44, 45, § 29-5B(a)). In the DRD zone, there is a maximum density of three dwelling units per acre, and 10% must be affordable units. The subject property met the minimum acreage requirement, 3 acres, and could comply with the other criteria for the DRD district in the schedule of regulations. In addition to requiring a special permit and site plan review, the setbacks from an adjacent residential zone must be at least 75 feet, while the setbacks in the R-1A zone is only 30 feet for a side setback and 40 feet for a rear setback.
The Town Plan of Development (now known as the Plan of Conservation and Development) was extensively reviewed and CT Page 498 revised by the Planning and Zoning Commission in 1996. The revised Plan of Development was adopted by the Commission on September 1, 1996. The Plan of Development and its applicability is extensively discussed in the Clark Report at pages 6-10. It specifically recommends the subject property for moderate density housing of three to seven units per acre on the residential densities plan map.
The Plan of Development also discusses a need for diversification in housing, different types of housing to meet the needs of a growing population of elderly residents who do not want to leave the town, and making housing more affordable by increasing the density (more units per acre). Specific recommendations of the plan are for high to moderate density housing to have proximity to Wilton Center and availability of public water and sewer. Moderate density housing is defined in the Plan as an "area presently served with public water and public sewer where land characteristics, roads and utilities may support a moderate density (3 to 7 units per acre)." The subject property is served by public water supply and public sewer, and the location, shape, topography, access and neighboring land uses make it suitable for the above described housing. Indeed, it was identified as a moderate density multi family site in the Town Plan, and the Commission's staff recommended the DRD Zone as a transition zone for this property between the commercial zoning to the south and west and the single family residential zoning to the east and north. Clark Report, page 9.
Evidence in the record indicates that there had been no standard subdivisions for single-family residences in over 30 years along Route 7 from the Norwalk town line to Olmstead Hill Road in the northerly part of Wilton. (Exhibit B in the record). The record evidence was further supplemented by the testimony of Michael B. Gold (M.A.I.) at the hearing of November 21, 1997 as summarized in his report submitted as a full exhibit (Exhibit A).
At the final meeting on the application, the Commission took action on the draft resolution prepared by staff. First, the Commission voted to delete reason #3 from the resolution which read:
 "the impact on traffic safety has not been adequately addressed as the sight lines are inadequate for vehicles traveling north on Danbury Road to achieve safe stopping distance when vehicles are exiting from the site." CT Page 499
The Commission then denied the zone change by a 4 to 3 vote, for the six remaining reasons in the draft resolution. (Exhibit C, Minutes of February 24, 1997.)
The court finds the deletion of Reason #3 to be consistent with the more persuasive evidence in the record. Single family development in RA-1 configuration, if economically viable, would create a multiple number of driveway cuts onto Route 7. The record indicates that clustering pursuant to a proposed D.R.D. would result in one such curb cut. Additionally, the traffic report by Kasper Groups Inc. (part of Exhibit B) indicated:
A) Site line distances were good.
B) Site Generation as proposed would be de minimus during peaks.
C) There would be virtually no impact upon levels of service and a negligible impact on traffic flow.
Assuming, therefore, that Reason #3 had not been deleted, the court would have found same invalid as inconsistent and contrary to the probative evidence in the record.
The balance of the reasons, totaling 6 in number must be examined as to validity. If any one of same is found by the court to be a valid basis for denial, then the action of the Commission must be sustained. Zygmont v. Planning Zoning Commission,152 Conn. 550, 553; Burnham v. Planning Zoning Commission,189 Conn. 261, 265; Land Use Law Practice, Connecticut PracticeServices, Fuller, Sec. 33.2 @ 564 et. seq.
Reason #1:
 "The Plan of Conservation and Development adopted in 1996 is an advisory document and looks to the future development of the Town. However, recommendations in the Plan are not site specific and do not mandate zone changes."
 Findings As To Reason #1:
The first sentence is true but only sets forth a statement as to the nature of a master plan. It is not in and of itself a CT Page 500 valid reason for denial. Likewise, the fact that a plan of development does not mandate a zone change is not a reason for denial but simply an additional general statement about the plan. In this case the court finds that the 1996 Plan of Development does recommend specific areas for moderate density housing including the subject property and as the maps in the record confirm, are clearly site specific as to the subject property.
It should be kept in mind that in Wilton the Planning Commission and Zoning Commission are not separate, and it is the same combined Commission that two months before the zone change application here adopted significant revisions to the plan of Development. As indicated in the Clark Report, both the text of the plan of Development amendments and the maps included in it specifically designate the subject property for moderate density housing, and it meets the qualifications for that use by having public water and sewer, which support the moderate density of 3 to 7 units per acre. (Clark Report of November 19, 1996, Exhibit B.)
The court finds the first stated reason for denial to be seemingly paradoxical, disingenuous and inconsistent with prior action of the very same Commission. The reasoning at best is general and vague and what purports to be a valid reason is substantively vacuous. The stated reason is found to be invalid.
Reason #2 and #4 will be considered together.
Reason #2:
 "It is not appropriate to change the zone from R-1A to DRD because it is incompatible with the commercial development to the south and west and with single-family development to the north and south."
 Reason #4:
 "DRD allows more coverage, but requires smaller units than R-1A. Such a development is not compatible with the character of adjacent residential development of houses on 1 and 2-acre lots."
 Findings as to Reasons #2 and #4:
The court finds that both of these stated reasons ignore: CT Page 501
1. the site location and particular transitional suitability;
2. characteristics of the site itself: topographical, geometric, geologic and otherwise;
3. the history of RA-1 development or lack thereof on the Route 7 corridor as clearly established in the record;
4. the record of other D.R.D. development within close proximity to the subject and the reasons therefore.
The court, therefore, finds each of these stated reasons to be invalid.
Reason #5:
 "The Planning and Zoning Commission has a duty to promote housing choice, but from the information submitted by the applicant, it is not clear that the prices at which the units would be offered would promote housing diversity."
 Findings as to Reason #5:
The court finds that the character and nature of the proposed D.R.D. in this clearly transitional location would accomplish that which the Commission's stated duty requires. Commercial development of the site would certainly not provide for housing choice. RA-1 development would not provide for housing choice and diversity and from the record, such development would simply not take place at this location. Economic risk is a developers concern and not that of the Commission. The character, nature and type of housing insofar as housing choice and diversity is concerned is not dictated solely by price.
The court, therefore, finds the stated reason to be invalid.
Reason #6:
 "The Plan of Conservation and Development sets forth a overall goal to retain the existing predominantly low density single-family housing."
 Findings as to Reason #6:
CT Page 502
The court finds that the above purported reason once again ignores the site specific realities of the property subject of the application. The Commission herein seizes upon a general goal or policy in the Plan of Development and ignores the fact that the reason appears to be inconsistent with the choice and diversity reasoning set forth in "Reason #5". More importantly, the Commission ignores the site's specific recommendations in that same Plan. Logic and straight forward thinking requires progression from the general to the specific not an attempt at inverse rationalization which is clearly the case in this instance.
The court finds this stated reason to be invalid.
Reason #7:
 "The site has many physical restraints such as steep slopes and wetlands that do not lend it to an intense multi-family zone."
 Findings as to Reason #7:
The use of the words "intense multi-family zone" are simply inappropriate and inaccurate. The Plan of Development Plan Map uses the words "MODERATE DENSITY HOUSING" (3 to 7 units per acre). Additionally, the court finds the reasoning to be convoluted, as the very characteristics that make the sites appropriate for multi family are cited for the opposite conclusion. An appropriate multi-family zone with sites plan review would allow for configuration and design to avoid steep slopes and wetland location. Wetland mitigation could also be provided as needed.
The court finds the stated reason to be invalid.
To summarize, the court finds that the actions of the Planning and Zoning Commission in the instant application can only be described as a total divergence from common sense. The mental gymnastics that were reverted to in coming up with the purported reasons for denial are paradoxical, inherently inconsistent, inapposite, disingenuous and certainly inconsistent with staff and Commission position taken just prior to plaintiff's application.
Fairness, equity, plain good sense and relevant law require CT Page 503 the court after a careful examination of the entire record to find that none of the reasons assigned by the Commission for refusal to grant the zone change are valid. The decision of the Commission was clearly not driven by the realities of the situation in the record.
The court, therefore, concludes that none of the stated reasons for denial are valid as can be supported by the probative evidence in the record.
As to the corollary issue of "practical confiscation" the court finds that such a conclusion is premature based upon the record as a whole. Alternative use of the site has not been fully explored and exhausted. While some of the less weighty evidence would disclose other possible uses such as congregate housing and nursing homes such evidence lacked substance and once again divorced itself from the realities of the site. RA-1 development simply ignores the distinction between what is physically possible and what is economically viable.
The site location, however, may lend itself to possible commercial development. Given the intensity of the opposition by concerned residential neighbors and potential traffic generation such development is unlikely but none the less possible.
The court finds that merely because this application has been denied does not mean the Planning and Zoning Commission will deny all others. Until that has occurred, the court cannot find that there is a final deprivation of any and all reasonable and proper use of the property. Land Use Law Practice, ConnecticutPractice Series, Fuller, Sect 54.5 @ 876 et. seq.;Timberlain Development Corporation v. Planning and ZoningCommission of the Town of East Haven, 43 Conn. App. 606. Additionally, for the reasons stated, at this point, it does not appear that only one conclusion can be reached relative to the subject property. Accordingly, the court will not remand with direction. The appeal is, therefore, sustained and the Commission is instructed to proceed according to the law whether by reconsideration or otherwise.
COMERFORD, J.