[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
STATEMENT OF THE APPEAL
The plaintiff Herman M. Frechette appeals from a decision of the defendant Inland Wetlands Agency of the Town of Coventry denying an application of H. M. Frechette Real Estate, Inc. to build a single family home in the buffer zone to the Willimantic CT Page 8891 River.
The defendant is the municipal inland wetlands agency authorized to enforce the Inland Wetlands and Watercourses Act, General Statutes §§ 22a-36 to 22a-45, and the Town of Coverntry Wetlands and Water Course Regulations (Regulations.)
FACTUAL AND PROCEDURAL HISTORY
On January 2, 1995, the plaintiff H. M. Frechette signed an application on behalf of the applicant H. M. Frechette Real Estate, Inc. seeking permission to build a house, as well as a footing drain, retaining wall, driveway and septic system and to provide grading on property located on Brigham Tavern Road, Coventry. (Return of Record [ROR] Item ) The construction was planned for approximately eighty feet uphill from the edge of the river. (ROR, Item 1, p. 5.) The applicant is not the owner of the property, but has a sales agreement to purchase the land. (ROR, Item 1, p. 6.) Evidence indicates the property is a steep parcel of land that was labeled as "other land" when a larger tract was subdivided in the past. (ROR, Items 11; 13, p. 7.)
On November 29, 1995, the defendant held a hearing on and denied the application. (ROR, Item 9.) On December 28, 1995, the plaintiff appealed the denial. The court, Bishop, J., found that the defendant's decision was not based on substantial evidence and remanded the case to the defendant to give the plaintiff a full and fair opportunity to present evidence and argument regarding the impact of this project on the wetlands and watercourse and for such other evidence as the IWA may require.Frechette v. Town of Coventry, judicial district of Tolland at Rockville, Docket No. 59673 (April 8, 1997).
On June 25, 1997, the defendant held a regular meeting to reconsider the application and determined that the proposed activity is likely to have a significant impact on a wetlands or watercourse and scheduled a public hearing. (ROR, [Transcript of 6/25/97 Meeting] Item 20, p. 28.) On July 23, 1997, the defendant held a public hearing to reconsider the application. (ROR, [Transcript of 7/23/97 Public Hearing] Item 24. On August 27, 1997, the defendant held a discussion of the application and then denied the application by an unanimous vote of the four members in attendance. (ROR, Item 27.) A copy of the decision was mailed to H. M. Frechette, Real Estate, Inc. on September 2, 1997. (ROR, Item 28.) The decision was published in The Chronicle CT Page 8892 on September 5, 1997. (Complaint, ¶ 10; Answer, ¶ 10.) The plaintiff appealed the decision on September 19, 1997. (Citation.)
JURISDICTION
General Statutes § 22a-43 provides that any person aggrieved by any decision made by a municipal wetlands agency may appeal to the superior court.
AGGRIEVEMENT
[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal. Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996).
The defendant argues that the plaintiff is not aggrieved and lacks standing to prosecute this appeal on two grounds. The defendant claims that since the application was made by a corporation, the plaintiff, a natural person, may not maintain the appeal. The defendant also claims that since the application was not signed by the owner of the property, written consent by the owner to the proposed activity had to be notarized pursuant to 6.2 and 7.2 of the Regulations. There was no notarization.
The plaintiff counters that he has pleaded and proved aggrievement and that the court has already found aggrievement. After the first hearing in this matter, the court held: "The plaintiff had a contract to buy the property in question and was authorized to bring a permit application before the Zoning Board of Appeals. The court finds that the plaintiff is an aggrieved party." Frechette v. Town of Coventry, supra. The court will address the issue again, however, since the plaintiff's standing was not challenged by the defendant during the previous hearing and once the question is raised, it must be addressed by the court. Fink v. Golenbock, 238 Conn. 183, 199, 680 A.2d 1243
(1996).
A. Herman Frechette as Plaintiff
"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate CT Page 8893 nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Internal quotation marks omitted.) R R Pool Home, Inc. v. Zoning Board ofAppeals, 43 Conn. App. 563, 569-70, 684 A.2d 1207 (1996). "The fundamental test for determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision . . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citations omitted; internal quotation marks omitted.) Huck v. Inland Wetlands Watercourses Agency,203 Conn. 525, 530, 525 A.2d 940 (1987) The owner of a contract to purchase property has a sufficient interest in the property for standing to appeal an agency decision adverse to its specific interest in the property. Fletcher v. Planning ZoningCommission, 158 Conn. 497, 502-03, 264 A.2d 566 (1969); Shulmanv. Zoning Planning Board, 154 Conn. 426, 431, 226 A.2d 380
(1967). The principal of a corporation may have such a unity of interest with the company that he has standing. Loew v. Falsey,144 Conn. 67, 74, 127 A.2d 97 (1956) In Loew v. Falsey, the owner of the building was E. M. Loew, Inc., but the permit applicant was E. M. Loew. The court found that while the corporation may have held the legal title to the premises, E. M. Loew owned and controlled the corporation and was the beneficial owner. Id. InDiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369,376-77, 588 A.2d 244, cert. denied, 219 Conn. 903, 593 A.2d 129
(1991), the court found that both the father, the owner of the property, and the son, the applicant, had standing to appeal from the agency's decision denying the son's application. The court noted that the father and son had appeared before the board as applicants and the father had the requisite personal interest in the proposal. Moreover, the board admitted in its pleading that the plaintiffs were the applicants." Id., 375. See Infante v.Planning Zoning Commission, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 215062 (January 23, 1986, Jacobson, J.) (as sole stockholder of corporation, plaintiff is beneficial owner of corporation's real property and thus is CT Page 8894 aggrieved by agency decision). Compare D.S. Associates v.Planning Zoning Commission, 27 Conn. App. 508, 512,607 A.2d 455 (1992), in which the court held that the interests of a partnership and a corporation were not the same, although the partners and shareholders were the same.
The record indicates that although the H. M. Frechette Real Estate, Inc. is indicated as the applicant, the plaintiff signed the application. (ROR, Item 1) The plaintiff was introduced to the defendant as both the principal for the applicant and the applicant. (ROR, Item 20, p.; Item 24, p. 1) The plaintiff appeared before and was treated by the defendant as the applicant. (ROR, Item 24, pp. 5, 16, 19.) The plaintiff told the defendant he was a real estate broker and a builder. (ROR, Item 24, p. 4.) The plaintiff made it clear to the defendant that he intended to build a house on the subject property should approval be given. (ROR, Item 20, pp. 4, 12-13.) In addition, the defendant admitted in its pleading that the plaintiff was the applicant.[1] In all, the record supports a finding that the plaintiff has the requisite specific, personal and legal interest in the property to be aggrieved by the decision of the defendant. The plaintiff's "interest is readily distinguished from a general interest, such as is the concern of all members of the community as whole." DiBonaventura v. Zoning Board of Appeals, supra,24 Conn. App. 376.
B. Lack of Notarization by owner
Regulation 6.2 states: For preliminary review, the application may include the following information as required by the Agency. "b. If applicant is not the owner of the land, the owner(s) name and address and owner(s) written consent, duly notarized, to the proposed activity set forth in the application." Section 7.2 states: "The final review of the application shall include all the information required for the preliminary review as set forth in Section 6.2 . . . ."
The record does not indicate the defendant ever required the plaintiff to obtain a notarized authorization from the owner. The plaintiff provided the owner's name along with his own interest in the land on the defendant's application form. (ROR, Item 1.) When asked by one member of the defendant agency if he was the owner, the plaintiff said he was not. (ROR, Item 24, p. 15.) In none of the public hearings before the defendant did any member of the agency mention the notarization requirement. CT Page 8895
The record fails to support the defendant's argument that the plaintiff was required to submit a notarized authorization with this application. See Property Group, Inc. v. Planning ZoningCommission, 226 Conn. 684, 703, 628 A.2d 1277 (1993) (record does not indicate "that an intent to comply with the regulation helped form the collective intent of the commission.")
The court finds the plaintiff has the requisite standing to prosecute this appeal.
B. Timeliness
General Statutes § 8-8 (b) governs the timeliness of an appeal of a decision of a local inland wetlands agency. General Statutes § 22a-43 (a). General Statutes § 8-8
(b) provides that an appeal shall be commenced by service of process in accordance with § 8-8 (e) within fifteen days from the date that notice of the decision was published. Subsection § 8-8 (e) provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
The defendant denied the application on August 27, 1997 and published the decision on September 5, 1997. (Complaint, ¶ 10; Answer, ¶ 10.) The appeal was commenced on September 19, 1997, by service of process upon the chairman of the defendant and the town clerk. (Sheriff's Returns.)
The court finds that the appeal was filed in a timely manner.
DISCUSSION
The Inland Wetlands and Watercourses Act and the defendant's regulations require the defendant, when deciding whether to issue a permit for an activity that may have an impact on a wetlands or watercourse, to take into consideration various facts and circumstances and state upon the record the reasons for its decision. General Statutes §§ 22a-41; 22a-42a (d)(1) ; Regulation § 5.1.
The defendant denied the application for five reasons: The nature of the material to be removed or deposited by the proposed CT Page 8896 activity will have negative effects on flood control, water supply and quality, and on aquatic organisms. With the tremendous amount of fill coming into this property, there will be damage to the Willimantic River with soil eroding directly into the river causing a deterioration of water quality and the deterioration of the fisheries and the river's ability to sustain aquatic life. (2) A feasible and prudent alternative does exist. (3) The importance of the area to the region with regard to water supply, water purification flood control, natural habitat, recreation, open space, and size, outweighs the need for the proposed activity. Reference and comments from the book "Elements of Ecology and Field Biology" and articles entitled "Riparian Areas, Environmental Uniqueness, Functions and Values" and "Riparian Forest Buffers." (4) The proposed activity will cause irreversible and irretrievable commitment of resources. The ;surface water and ground water quality will be adversely impacted and eventually the quantity of ground water recharge will be decreased. (5) The danger of erosion created by the proposed activity cannot be minimized by the use of appropriate erosion and sedimentation controls." (ROR, Item 28.)
The plaintiff appeals the decision on three grounds: (a) all the testimony presented at the hearing indicated there would be no adverse impact on the inland wetlands area and there was no evidence presented indicating there would be any adverse impact; (b) one member who did not attend the July hearing discussed the application during the August meeting; (c) the denial of the application constitutes a "taking".
A. Substantial Evidence in the Record
General Statutes § "22a-42(a) expressly encourages localities to regulate wetlands within their jurisdiction. In interpreting the wetlands act, our Supreme Court has concluded that a local agency empowered to implement the wetlands act must . . . be vested with a certain amount of discretion in order to carry out its function . . . . In deference to this discretion, review of wetlands commission decisions is not de novo. Instead, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given . . . . " (Citations omitted; internal quotation marks omitted.")Woodburn v. Conservation Commission, 37 Conn. App. 166, 107-01,655 A.2d 764, cert. denied, 233 Conn. 906, 657 A.2d 645 (1995), "The evidence, however, to support any such reason must be CT Page 8897 substantial; the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. (Citations omitted; internal quotation marks omitted.) Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. 540.
The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration. . . . [It] imposes an important limitation on the power of the court to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action." (Citations omitted; internal quotation marks omitted.) Id., 541.
"[T]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." (Internal quotation marks omitted.)Feinson v. Conservation Commission, 180 Conn. 421, 425,429 A.2d 910 (1980). "[A] administrative agency is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair." Huck v.Inland wetlands Watercourse Agency, supra, 203 Conn. 542. "Judicial review of administrative process is designed to assure that administrative agencies act on evidence which is probative and reliable and act in a manner consistent with the requirements of fundamental fairness." Feinson v. Conservation Commission, supra, 429.
At the defendant's regular meeting on June 25, 1997, the plaintiff and his attorney made a presentation. John Ianni, a soil scientist, testified on the plaintiff behalf. The plaintiff submitted the transcript of the November 29, 1995 hearing. In addition, the plaintiff submitted documents that had been presented at the November hearing and these documents were read into the record.
The plaintiff testified that the plans call for either a silt fence or bales of hay to be put on the site during the CT Page 8898 construction to prevent sludge from flowing into the river, but he would install both measures. (ROR, Item 20, pp. 4-5.) He also said he would visit the site each evening during the construction period to ensure that the hay bales were in place. (ROR, Item 20, pp. 4-5.) The plaintiff and Ianni testified that the double row of erosion control would prevent erosion from entering the river and that the septic system would not affect the river. (ROR, Item 20, pp. 4-5.) Stephen Wallace, the defendant's wetlands environmental officer, stated that the installation of hay bales on such a steep slope would not be an adequate measure. (ROR, Item 20, pp. 17-18.)
Members of the defendant agency raised concerns about the project affecting University of Connecticut water wells across the river. Ianni testified that any sediment entering the river would be washed downstream and would not impact the wells. (ROR, Item 20, p. 10.)
Members of the agency were concerned that the flat area of the property where the construction was proposed would be too small to handle the construction, the construction would have to be done further down the hill where the property was much steeper, proposed erosion prevention measures would be inadequate and thus, erosion would enter the river. (ROR, Item 20, pp. 17-19.) Ianni stated that although there was a marked drop-off on the property toward the river, the construction would be done on the flat area of the property. (ROR, Item 20, p. 18.) The defendant's chairman questioned the dimensions and elevation of the retaining wall and its ability to contain erosion. (ROR, Item 20, pp. 16-17.)
The public hearing was held July 23, 1997. (ROR, Item 24.) The plaintiff, Peter Henry, a licensed land surveyor, John Willnauer, a building inspector, and Ianni testified. Henry testified that the house would be built in the best possible spot on the site. (ROR, Item 24, pp. 4.) He also testified that the plan calls for 460 yards of fill, not an exceptional amount for such construction. (ROR, Item 24, p. 5.) Willnauer testified that the hay bales and silt fence would prevent any debris from entering the river as a result of the construction of the home, driveway, septic system, footing drain and from grading. (ROR, Item 24, pp. 7-8.) Ianni testified that the silt fence and hay bales could be installed before the site was cleared. (ROR, Item 24, p. 11) The chairman continued to find the plaintiff's plans to be unclear as to when and exactly where the retaining wall CT Page 8899 would be built. (ROR, Item 24, pp. 2-4, 23-24.)
Members of the agency expressed concerns about clear cutting trees, the insufficiency of the retaining wall and the possible erosion both during and after construction. Some of the members made reference to information contained in the "Elements of Ecology and Field Biology" book and the "Riparian Areas, Environmental uniqueness, Functions and Values" article. (ROR, Item 24, pp. 21; 28.) The members did not appear to be convinced that the proposed hay bales and silt fences would adequately prevent erosion from entering into the river. (ROR, Item 24, pp. 21-29). The hearing was closed. (ROR, Item 24, p. 29.)
At the defendant's August 27, 1997 meeting, the members discussed and voted on the application. (ROR, Item 27.) Various members expressed concern about the order of construction and the effectiveness of the erosion control measures. One member quoted resource material stating that "siltation is caused by the erosion of the land and is the most insidious form of pollution." (ROR, Item 27, p. 3.)
The record indicates that both during the regular meeting and during the public hearing the applicant was able to make its presentation and was made aware of the various concerns of members the agency. Evidence in the record also indicates that members of the agency understood the sharp steepness of the property, the proposed construction and the proposed erosion prevention measures. The defendant did not have to accept the testimony of the plaintiff and his experts that the plans would satisfactorily prevent erosion from entering the river. Huck v.Inland Wetlands Watercourses Agency, supra, 203 Conn. 542. The defendant's wetlands environmental officer disputed the effectiveness of at least one of the erosion control measures.
The court finds there was substantial evidence in the record to support the finding by the defendant that the danger of erosion created by the proposed activity would not be minimized by the use of the planned erosion and sedimentary controls. Thus, the court need not address the other reasons offered by the defendant for its decision.
B. Discussion and Vote by a Member not at Hearing
The plaintiff "questions" the active role of member Lori Mathieu in the discussion during the August 27, 1997 meeting, CT Page 8900 when she did not attend the July 23, 1997 public hearing. The plaintiff mentioned this issue in his brief without citation or analysis. To the extent the plaintiff is claiming he is aggrieved as a result of Mathieu's participation in the discussion and vote in the decision, the plaintiff has the burden of proving that Mathieu did not acquaint herself with the issues. Lauer v. ZoningCommission, 220 Conn. 455, 470, 600 A.2d 310 (1991). The plaintiff has failed to meet his burden of proof on this claim.
C. Taking by the Defendant
The plaintiff claims that if the court sustains the defendant's decision, the defendant's action will have constituted a taking and, therefore, the court should remand the matter to the defendant to determine fair market value of the property. The plaintiff, however, has failed to provide sufficient analysis for this claim. The plaintiff has failed to establish what property interest has been taken in light of the fact that he has a contract to purchase the property contingent on obtaining the defendant's approval. Gil v. Inland Wetlands Watercourses Agency, 219 Conn. 404, 410, 593 A.2d 1368 (1991) (the property interest that has allegedly been taken must first be defined.)
Thus, the appeal is dismissed.
J. Klaczak