[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff in this appeal complains that the defendant, Plan and Zoning Commission (hereinafter "the commission') acted illegally and arbitrarily in approving an application for a special permit for the construction of 28 housing units when the applicant sought approval for 36 units. The property involved has an area of 11.55 acres and lies in a Designed Residence District which because of the underlying residential zone (previous zonal classification was R-3) permits a maximum density of 3.2 units per acre. The plaintiff asks the court to invalidate the reduction in the number of units and to order the defendant to approve the application for the 36 units.
 Aggrievement
Through the testimony of Mary Ann Sych, the president of Stratfield Falls, Inc. the evidence established that the CT Page 11823 plaintiff has owned the property subject to the appeal continuously from the date it made application to the date of the hearing (Plaintiff's Exhibit A). Accordingly, the plaintiff is aggrieved. Goldfeld v. Planning and Zoning Commission,3 Conn. App. 72 (1975).
The commission granted this special permit in 1997. In 1993 at the plaintiff's request, it approved a two part application: (i) to change the zone from R-3 to Designed Residence District, and (ii) for a special permit to construct 40 housing units for the elderly. That permit carried with it the further condition and restriction that each unit be occupied by not more than 2 persons. Between 1993 and 1997 the plaintiff has been able to sell only 1 unit as so restricted.
The plaintiff points out that the maximum allowable number of elderly units in 1993 was 55 (11.55 by 2 = 36.96 plus 50% = 18.48)[1] whereas the maximum allowable number of unrestricted units in 1997 was 36. While the plaintiff sought and received approval in 1993 for only 40 of the 55 units allowable, it is seeking approval in the current application for the full number allowable under the regulations and no less.[2] The plaintiff argues (a) that the defendant has no authority to approve less than the full amount because the regulations contain no explicit authority to do so, and (b) if the commission was entitled to consider traffic impact it acted illegally in refusing to accept the testimony of the plaintiff's traffic expert who opined that the impact would be "slight and negligible".
The specific test which the court must apply to the commission's action in this special permit proceeding is two pronged: (a) whether any one of the reasons given by the commission was pertinent to the considerations which the commission was required to apply; and (b) whether any such reason is reasonably supported by the record. Housatonic Terminal Corp.v. Planning and Zoning Board, 168 Conn. 304, 305 (1975). The proposed use, however, must satisfy the standards set forth in the zoning regulations. Accordingly, the commission's function was to determine whether the applicant proposed use was expressly permitted and whether the standards set forth in the regulations were satisfied. A. P. and W. Holding Corporation v. Zoning Board,167 Conn. 182 (1974).
Section 8-2 of the General Statutes empowers a zoning commission to grant special permits "subject to standards set forth in the regulations and to conditions necessary to protect CT Page 11824 the public health, safety convenience and property values". Based upon these principles the plaintiff maintains quite correctly that in granting a special permit, a zoning commission is limited to determining whether the application satisfies the standards set forth in the regulations and may not impose conditions which alter or add to the standards. Beckish v. Planning and ZoningCommission, 5162 Conn. 11, 14 (1971). In challenging the commission's authority the plaintiff misconstrues this principle by equating it with the more limiting principle which governs site plan review. T.L.C. Development, Inc. v. Planning and ZoningCommission, 215 Conn. 527 (1990).
The principle enunciated in the T.L.C Development case has no application to the special permit provisions of § 8-2 so that a zoning commission, pursuant to appropriate regulations, is free to impose reasonable conditions not specifically articulated in the regulations which are necessary to protect the health, safety, convenience and property values off of the specific site of the project under review. Schulman v. Zoning Board of Appeals,154 Conn. 426, 429 (1967). While Goldberg v. Zoning Commission,173 Conn. 23 (1997) has been overruled, (see, T.L.C. Development,Inc v. Planning and Zoning Commission, supra at 530, n. 2) its rationale retains vitality with respect to the special permit provisions of § 8-2.
The thrust of the plaintiff's argument with respect to the commission's authority is that the language of the special permit regulations are too broad and generalized to constitute a valid basis for reducing the number of units based upon traffic considerations.
The starting point for the court's analysis of this argument is the regulations which govern the Designed Residence zone. Section 10.2 provides that the purpose of the district "is to provide flexibility in site, design and housing construction" (Emphasis added). Section 10.6.3 fixes "the maximum allowable
dwelling unit density" at 3.2 units per acre (Emphasis added). These two provisions evince an intent on the part of the zoning commission that enacted them to vest itself with considerable discretion in acting upon an application for a special permit for the construction of housing units within this zonal district. Hence, in the process of its special permit review the commission is expected to be flexible and not rigid in the application of the special permit standards and requirements. including approving a number of units which are less than the maximum allowable number. CT Page 11825
The regulation which governs all designed districts in the Town of Fairfield requires issuance of a special permit for all principal uses subject to the "applicable special standards for special exception uses under § 27 of the . . . regulations". Sec. 25.1. Section 25.7.7 requires that all developments "be of such a character as to harmonize with the neighborhood, to accomplish a transition in character between areas of unlike character, to protect property values in the neighborhood, to preserve and enhance the appearance and beauty of the community, and to avoid undue traffic congestion."
The plaintiff contends that such language is too vague, imprecise and lacking in explicit standards adequate to enable it to determine intelligibly how it may bring its development into compliance and thereby satisfy those standards. This type of attack on a similar special exception provision was rejected by our Supreme Court in Cameo Park Homes, Inc. v. Planning andZoning Commission, 150 Conn. 672 (1953) wherein the court held that a special permit application may be denied on the basis of general considerations alone such as necessity to protect property values and the public health safety and welfare. Similarly, the Appellate Court upheld denial of a special permit on the grounds that the development would "create a pedestrian hazard and would conflict with the traffic characteristics of the surrounding neighborhood" holding that such a reason for denial was authorized pursuant to a regulation which was general in nature. Whisper Wind Development Corp. v. Planning and ZoningCommission, 32 Conn. 515 (1993); aff'd., 229 Conn. 176 (1994). This court therefore holds that the generalized standards contained in § 25.7.7 of the Fairfield zoning regulations are not so vague and ill defined as to render them void and therefore unenforceable.
As a corollary to that argument, the plaintiff contends further that once it has fulfilled all of the special exception requirements set forth in the regulations the commission has no discretion and must issue the permit. In Irwin v. Planning andZoning Commission, 244 Conn. 619, 631 (1998) our Supreme Court considered an identical argument. That court distinguished between a zoning commission's authority over a subdivision application and an application for a special exception stating that "the zoning commission had broader discretion to make its determination about the plaintiff's special exception application than it would have had with a subdivision application". See also,Sowin Associates v. Planning and Zoning Commission,
CT Page 1182623 Conn. App. 370 (1990). In this case then, the commission was endowed with liberal discretion in determining whether a concern such as traffic congestion would adversely impact the surrounding neighborhood. Irwin v. Planning and Zoning Commission, supra at 627.
It necessarily follows that if a zoning commission has discretion to deny a special permit because of a development's perceived impact on traffic conditions, it certainly has the power to impose a condition reasonably calculated to prevent such an impact, or as in this case, to approve a less intense use than that for which application was made.
This leads to a consideration of the specific action of the Commission of which the plaintiff complains, namely, approval of a lesser number of units than the number applied for. In approving 28 units, the commission determined that such a number would "harmonize with the neighborhood, accomplish a transition in character between areas of unlike character, will protect property values in the neighborhood, will preserve and enhance the appearance and beauty of the community, and will avoid undue traffic congestion."[3]
At this juncture it must be noted that while the plaintiff's attack is limited to the issue of traffic impact, the commission's reasons for approving only 28 units are not so limited. The commission was authorized to and did in fact consider the effect which a development no longer limited to occupancy by no more than 80 elderly persons would have on the character of the neighborhood, its property values and community appearance. It was entitled to and did consider the fact that unrestricted occupancy by 28 families with young children, with the concomitant accompaniment of motor vehicles, would likely have a more harmful effect on the neighborhood than 40 units limited to 80 persons.[4]
Proceeding now to a consideration of the plaintiffs claim that the commission improperly preserved "a ratio" of density between what it approved in 1997 with what it approved in 1993, the court concludes that not only was the commission within its legal authority in doing so but there was ample support in the record for such action.
Because the court has already concluded that the commission possessed the legal authority to approve 28 units and was not compelled to approve the "maximum allowable" it remains to be CT Page 11827 decided whether such determination was supported by substantial evidence in the record. Huck v. Inland Wetlands and Watercourses Agency,203 Conn. 525, 539-40 (1987). As a preliminary matter it is noted that while the commission approved 78% of the maximum allowable units in 1997 it approved only 73% of that maximum in 1993.
The plaintiff's principal claim with respect to the commission's articulated reasons viz: to "avoid undue traffic congestion" is that the commission ignored the undisputed expert testimony of Irving Chann of I.K. Chann Associates Transportation Engineers. (ROR #5).[5] In opining to the commission Mr. Chann relied on his traffic impact study of 1993 as updated by his letter of April 23, 1997 (ROR #6). Mr. Charm characterized the difference between the 1993 and 1997 traffic impact as "slightly more" but "negligible". Yet, his 1997 report shows that peak hour a.m. traffic generation from the site will almost double and peak hour p. m. traffic will more than double. In the face of these facts the commission was not compelled to accept these characterizations.
In his live testimony Mr. Charm stated the following: "What I am looking for is to try to help you out with more along the lines of a direct translation to keep . . . everything equal to where you were before." Thus, even the plaintiffs traffic engineer recognized the merit to the commission maintaining a similar ratio of units to projected traffic generation.
Furthermore, the plaintiff's attorney John Curran, acknowledged that in 1993 the commission found that there would not be a traffic problem in building 40 units of elderly housing. He then argued that changing the 40 elderly units to 36 unrestricted units "would not change the equation." Such a conclusion is flawed because 28 unrestricted units will have considerably more occupants and therefore more vehicles. But more importantly, with no restriction on age, children will be permitted to live there which will tend to produce a greater number of vehicles trips per day. The same is true with regard to young adults who have not retired but who drive to work everyday. Such a person will generate more vehicle trips than a person who is over the age of 60 simply because many of the occupants in that age bracket are likely to be retired. So, it is not so much the number of vehicles present on the site, as they may or may not be the same, but rather the number of vehicle trips likely to be generated as a result the removal of the age restriction.
CT Page 11828 Moreover, Attorney Curran's reliance on the actual experience of other apparently similar housing developments is unwarranted because there can be no assurance that the age composition that populates these developments will occur in Stratfield Falls, given the variable nature of such factors as economics, affordability, location and not the least of all, the vagaries of human taste. (ROR #16, p. 53).
Not only was the commission entitled to engage in this kind of analysis in assessing the dimension of possible future impact on traffic conditions, but it was also within its authority to consider the first hand experience of individual members of the neighborhood who testified before it. Two of such persons were Peter Patrick and Rob Lacey.
Mr. Patrick stated that: "The traffic over the past four years since the initial project was approved, has significantly increased. You'll have to wait several minutes in order to get out during peak periods."
Mr. Lacy stated: "I live on Jefferson Street. (Abuts site on west). Let's say it takes me from less than a minute to sometimes five or ten minutes to get out of my driveway, depending upon the time of day." (ROR #16 pp. 36 and 41).
In connection with the commission's responsibility to look ahead to the future in weighing traffic impact it is important to emphasize that § 27.4.3 of the regulations requires that "the streets serving the proposed use shall be adequate to carryprospective traffic". and that the development not create "undue hazard to traffic or congestion" (Emphasis added).
In reaching their determination that the size of the development should be reduced from that which was proposed, the commission members may legitimately rely on knowledge acquired through personal observation of the site or through their own personal knowledge of the area involved. Raczkowski v. ZoningCommission, 53 Conn. App. 636 (1999). While this principle may initially have been reserved to zoning commission members acting in a legislative capacity, Burnham v. Planning and ZoningCommission, 189 Conn. 261, 267 (1983) it has been extended to apply to a commission acting administratively in performing a special permit review. Cybulski v. Planning and ZoningCommission, 43 Conn. App. 105 (1996); Frito-Lay, Inc. v. Planningand Zoning Commission, 206 Conn. 554, 570 (1988). CT Page 11829
Consequently, the commission members were entitled to rely upon their own knowledge of traffic conditions to confirm the facts to which the neighborhood residents had testified.Primerica v. Planning and Zoning Commission, 211 Conn. 85, 97-98
(1989).
Combining their own personal knowledge with the facts to which the neighbors testified, coupled with the unreassuring testimony of Attorney Curran and the traffic expert's own projection of an increase in peak hour traffic, the commission reasonably could have concluded that to permit significantly greater density at the site would cause "undue hazard to traffic or congestion," prospectively. (Sec 27.4.3., ROR # 17)
For these reasons the court finds that the commission did not act illegally or in abuse of its discretion in approving 28 of the units for which the plaintiff made application.
The plaintiff's appeal is dismissed.
THE COURT,
Mottolese, J.